NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 10a0281n.06

No. 09-1487

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**May 11, 2010**
LEONARD GREEN, Clerk

ANTHONY COOPER,                          )
                                         )
    Petitioner-Appellee,                 )
                                         )    ON APPEAL FROM THE UNITED
v.                                       )    STATES DISTRICT COURT FOR
                                         )    THE EASTERN DISTRICT OF
BLAINE LAFLER,                           )    MICHIGAN
                                         )
    Respondent-Appellant.                )

**BEFORE:  KENNEDY, COLE, Circuit Judges, and JORDAN[*], District Judge.**

**CORNELIA G. KENNEDY, Circuit Judge.**  The state appeals the district court's grant of

habeas relief to a petitioner who rejected a guilty plea based on the advice of counsel.  The district

court held that petitioner's counsel provided objectively unreasonable advice, and that petitioner

relied on that advice in rejecting the plea, going to trial, and receiving a much higher sentence.

Because we agree the state courts' decision rejecting petitioner's argument was an unreasonable

application of *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and because the terms of the

district court's conditional writ are reasonable, we AFFIRM.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 25, 2003, around 7:30 in the evening, Kali Mundy left an apartment building

where she was visiting an acquaintance.  As she entered her car, she saw the petitioner pull up in a

Ford Explorer being driven by Tava Simon.  Mundy had met petitioner once or twice prior, and

---

[*]The Honorable R. Leon Jordan, United States District Judge for the Eastern District of
Tennessee, sitting by designation.

exited her car as he exited his. They began walking towards each other. When they were six feet away from one another, Mundy testified, petitioner pulled out a handgun, pointed it towards Mundy's head, and fired.

An uninjured Mundy ran, but the shots continued. She was about forty yards away when a bullet hit her in the buttocks and another her thigh. She heard at least four shots being fired throughout the ordeal. She continued running, eventually collapsing at a neighbor's door.

An ambulance transported Mundy to a nearby hospital, where doctors discovered she had four bullet holes – two entrance wounds and two exit wounds. During an exploratory surgery, Dr. Ian Rubenstein discovered that one of the bullets had pierced her intestines, which were leaking. In Rubenstein's opinion, this was a life-threatening injury. Through surgery, he was able to repair Mundy's intestines, and Mundy was discharged after spending two-and-one-half weeks in the hospital and an additional period in rehabilitation. Mundy continues to experience daily pain from the incident.

Fortuitously, there were several police officers in the vicinity that evening. Officer Randell Coleman witnessed the shooting from several blocks away. He radioed a description of the shooter, who was running away from the scene of the shooting. Two other officers were in the vicinity, and Coleman witnessed them detain petitioner almost immediately. A small amount of marijuana was discovered in petitioner's pocket. Petitioner was transported to the police station, where a gunshot residue test was performed on him. William Steiner, a forensic chemist with the police department, testified that the test was positive, which indicated that petitioner had been in the presence of a firearm that had been discharged recently.

Petitioner was charged in the district court in Wayne County, Michigan, with Assault with Intent to Murder, Possession of a Firearm by a Felon, Possession of a Firearm in the Commission of a Felony, misdemeanor Possession of Marijuana, and a habitual offender enhancement. On April 14, 2003, Mundy, Coleman, and the arresting officer testified at petitioner's preliminary examination. At the examination, petitioner was represented by Brian McClain, who represented petitioner through sentencing. Following their testimony, the district court bound petitioner over to stand trial on all charges.[1]

After the preliminary examination hearing, the prosecutor communicated a verbal plea offer to McClain. The deal would have allowed petitioner to plead guilty to assault with intent to murder and face a below-guidelines minimum sentence of 51 to 85 months imprisonment. Petitioner indicated a willingness to accept a plea offer because he "was guilty,"[2] but the conversation he had with his attorney changed his mind. McClain had recently received Mundy's medical records, and believed that the nature of her injuries counseled against accepting a plea. At a post-conviction hearing, McClain recalled that during this conversation he advised petitioner not to plead guilty

---

[1]Rather than using a grand jury system, Michigan utilizes a preliminary examination where a district court "determine[s] whether probable cause exists to believe that a crime was committed and that the defendant committed it." *People v. Lowery*, 274 Mich. App. 684, 684, 736 N.W.2d 586, 589 (2007) (citing *People v. Perkins*, 468 Mich. 448, 452, 662 N.W.2d 727, 730 (2003)); *see also* Mich. Comp. Laws § 766.13. If the district court finds that there is sufficient evidence, the defendant is bound over to the circuit court to stand trial. Although the state need not prove its case beyond a reasonable doubt to have a defendant bound over, the district court must focus "his or her attention to whether there is evidence regarding each of the elements of the offense, after examining the whole matter." *People v. Greene*, 255 Mich. App. 426, 444, 661 N.W.2d 616, 627 (2003) (quotations omitted). For a felony charge, a defendant may appeal the bindover decision to the circuit court, the Michigan Court of Appeals, and the Michigan Supreme Court. *See id.* at 434, 661 N.W.2d at 621. Petitioner's counsel did not appeal the district court's decision to bind petitioner over for trial.

[2]McClain also testified that petitioner had indicated a desire to plead guilty.

3

because the assault with intent to commit murder charge "could not be supported by the evidence." Petitioner had a similar recollection. As he remembered it, because the victim was shot below the waist, McClain "told me that wasn't attempted murder," and that "they couldn't find me guilty of the charge [of assault with intent to commit murder] because the woman was shot below the waist." Petitioner specifically denied that McClain had ever told him: "I think you can be convicted of assault with intent to murder even if I think this is really nothing more than a great bodily harm [sic], certainly a jury still might find you guilty of assault with intent to murder." McClain was confident that the prosecution would ultimately offer a plea deal of 18 to 84 months closer to trial. McClain later admitted, however, that he could not remember a time when the prosecution's plea offer improved by the time of trial, absent a change in the evidence.

Thus, at a pre-trial conference on July 17, 2003, a week before trial was to begin, the prosecution provided petitioner and his counsel a written plea agreement of 51 to 85 months. McClain indicated on the record that the prosecutor's offered deal was "not reasonable," that there "is insufficient evidence" and that the "Prosecution does not have the evidence to try to [sic] this case."[3] The prosecutor, offended by McClain's comment that the offer was unreasonable, then

---

[3] On the record, McClain emphasized at length his view of the prosecution's evidence:

> After reviewing the medical report, your Honor, I believe that the Prosecution does not have the evidence to try to [sic] this case. We're willing to go to trial, but in the interest of Justice and due to the fact that [prosecutor] Mr. Skywalker is not trying the case, I would like to discuss this matter with the attorney who has will [sic] make the case for the Prosecution. I think he would be a little more reasonable about making a more reasonable offer so that we won't have a trial.
> I am fully prepared to prove that they do not have sufficient evidence at trial. I think the medical evidence will show that at trial.

4

stated "I withdraw this offer." (*Id.* at 4.) Undeterred, McClain then said, "We're just rejecting the offer." (*Id.* at 5.) Petitioner, who was present at the conference, was reading the plea offer he had just received. He was not asked about the plea agreement, and did not offer any comment on it.

Before trial, petitioner sent a letter to the presiding judge, expressing his desire to plead guilty to felonious assault, which carried a lower guidelines sentence than that offered to him by the prosecution. In the letter, he asserted that Mundy had a gun, and that he had shot her because he believed that she was going to harm another person. The trial judge, lacking authority to compel the prosecution to offer a plea deal, took no action. McClain was not aware of the letter until later.

On the first day of trial, the prosecution offered a significantly less favorable plea deal. The state would have allowed petitioner to plead guilty to assault with intent to commit murder, and agree to dismiss the other charges, including the habitual offender enhancement. This offer included a minimum sentence range of 126 to 210 months imprisonment. Petitioner rejected this plea agreement.

The case proceeded to trial. At trial, the prosecution's evidence was substantially similar to the evidence presented at the preliminary examination hearing. The most significant difference was the introduction at trial of Mundy's medical records and the testimony of a treating physician at the emergency room. The defense did not dispute petitioner's involvement in the shooting. Petitioner did not testify. Instead, the defense brought out testimony that there had been a previous, never-identified conflict between Mundy and one of petitioner's companions. Based on this testimony, the defense cast Mundy as the person responsible for the confrontation by lying in wait, and then running towards the petitioner's vehicle when it arrived. The defense also advanced the theory that the location of Mundy's injuries suggested that there was no intent to kill.

5

The jury found petitioner guilty of all crimes as charged, and he was sentenced to 185 to 360 months imprisonment. He did not file a direct appeal. However, in a post-conviction proceeding before the state trial court, petitioner raised several claims of ineffective assistance of counsel, and the state trial court held a hearing to assess his claim that counsel provided erroneous advice that led him to reject a favorable plea bargain. At the hearing, both McClain and petitioner testified about their conversation preceding the July 17 pre-trial conference. Following the hearing, the state trial court found that "[i]t was Mr. Cooper's belief based on his having counsel over in the jail, his being familiar with the hierarchy of charges, that at the absolute most . . . that he should only be found guilty of a felonious assault." Both petitioner and his attorney, the state trial court found, "were convinced that [conviction of assault with the intent to murder] couldn't occur." At another time, the state trial court described what happened as "[McClain] made an assessment based on his years as a criminal lawyer as to what he thought the People could or couldn't prove and what the medical evidence could or could not support and he made a recommendation to Mr. Cooper." However, the state trial judge ruled against petitioner's claim, finding that "Mr. Cooper made his own choices."

Petitioner appealed from the denial of the motion, and the Michigan Court of Appeals rejected his claim of ineffective assistance of counsel. *People v. Cooper*, No. 250583, 2005 WL 599740 (Mich. Ct. App. Mar. 15, 2005). The court reasoned:

> [T]he record shows that defendant knowingly and intelligently rejected two plea offers and chose to go to trial. The record fails to support defendant's contentions that defense counsel's representation was ineffective because he rejected a defense based on claim of self-defense and because he did not obtain a more favorable plea bargain for defendant.

*Id.* at *1. The Michigan Supreme Court denied leave to appeal. *People v. Cooper*, 474 Mich. 905, 705 N.W.2d 118 (Mich. Oct. 31, 2005) (table).

6

Petitioner then filed this petition in United States District Court seeking relief under 28 U.S.C. § 2254, alleging that his trial counsel provided ineffective assistance of counsel during the plea process. The district court conditionally granted the writ, holding that the state appellate courts unreasonably applied the Supreme Court's standards governing ineffective assistance claims, and that petitioner's trial counsel had provided ineffective assistance when he advised petitioner that the circumstances failed to satisfy the elements of assault with intent to commit murder and that he could negotiate a better plea deal later on. *Cooper v. Lafler*, 2009 WL 817712 (E.D. Mich. 2009). The district court concluded that "specific performance" of the plea deal that petitioner would have taken but for his attorney's ineffectiveness was warranted. It conditionally granted a writ, requiring the state to offer petitioner a sentence agreement of 51 to 85 months or release petitioner. The state timely appealed, arguing that counsel provided competent advice, there was no prejudice because petitioner received a fair trial, and the remedy ordered by the district court is unlawful.

## STANDARD OF REVIEW

We review de novo the district court's decision to grant habeas relief. *Robinson v. Mills*, 592 F.3d 730, 734 (6th Cir. 2010).

The federal courts may grant habeas relief to a petitioner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act (AEDPA), we may not grant habeas relief on a claim adjudicated on the merits by the state courts unless the state court's adjudication of a petitioner's claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

7

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1). Each of the clauses in subsection (1) carries independent meaning. *Williams v. Taylor*, 529 U.S. 362, 404 (2000).

"Contrary to" means "'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Id.* A state court decision can be "contrary to" federal law in two ways:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

*Id.*

"A decision is an unreasonable application of clearly established federal law, on the other hand, if 'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.'" *Smith v. Mitchell*, 567 F.3d 246, 255 (6th Cir. 2009) (quoting *Taylor*, 529 U.S. at 407).

Here, the Michigan Court of Appeals, "the last state court to issue a reasoned opinion on the issue," *Joseph v. Coyle*, 469 F.3d 441, 450 (6th Cir. 2006) (quoting *Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005)), failed to appreciate the nature of petitioner's claim. Rather than addressing petitioner's argument that he received legally erroneous advice from his counsel, the court of appeals rejected entirely different – and considerably weaker – claims of ineffective assistance of counsel. *See Cooper*, 2005 WL 599740, at *1. To the extent that petitioner's claim was addressed, it is not clear from the court's abbreviated discussion (only two sentences of the opinion is even arguably responsive to petitioner's claim) what the court decided, or even whether the correct legal rule was

8

identified. Equally unclear is whether we review such a claim de novo, *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (stating that deference was inappropriate when the state court applies a legal rule that contradicts governing Supreme Court law); *Van v. Jones*, 475 F.3d 292, 293 (6th Cir. 2007) (applying de novo review when state court did not address claim); *Fulcher v. Motley*, 444 F.3d 791, 799 (6th Cir. 2006) (applying de novo review when state court applied a legal rule contradicting governing Supreme Court law), or under some form of deferential review, *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (extending deference when state court's analysis was "flawed"); *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000) (extending deference when state court denied claim without articulating reasoning); *see also Richter v. Hickman*, 578 F.3d 944 (9th Cir. 2009) (en banc), *cert. granted*, *Harrington v. Richter*, --- S. Ct. ----, 2010 WL 596530 (2010). However, we need not decide how much deference the terse analysis provided by state court of appeals is entitled to here, because "[w]ith or without such deference, our conclusion is the same." *Smith v. Spisak*, 130 S. Ct. 676, 688 (2010). Even full deference under AEDPA cannot salvage the state court's decision.

## DISCUSSION

Petitioner's claim is that he was denied the effective assistance of counsel during pretrial proceedings when his counsel provided him erroneous advice. A petitioner must establish two elements to prevail on an ineffective assistance of counsel claim: deficiency and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel rendered deficient performance when he or she "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. We consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. When assessing deficiency, we "must

9

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

If counsel provided ineffective assistance, we must then determine whether the petitioner was prejudiced. Petitioner need not show "that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. However, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The *Strickland* framework for evaluating counsel ineffectiveness applies to advice regarding whether to plead guilty. *Padilla v. Kentucky,* --- S. Ct. ----, 2010 WL 1222274 (2010); *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). The deficiency portion of the test remains unchanged. Instead of focusing on the fairness of the trial, the prejudice component "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. If petitioner pleaded guilty, then petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* If petitioner chooses to reject a plea offer, on the other hand, he must show a "*reasonable probability* that, but for his counsel's erroneous advice . . . he would have accepted the state's plea offer." *Magana v. Hofbauer*, 263 F.3d 542, 551 (6th Cir. 2001). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

*1. Deficient Performance*

10

First, petitioner's attorney provided deficient performance. Counsel advised petitioner that he could not be convicted of assault with intent to commit murder because the bullets entered the victim's body below the waist. "The elements of assault with intent to commit murder are: (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v. Brown*, 267 Mich. App. 141, 147, 703 N.W.2d 230, 236 (2005) (quotations and footnote omitted). Thus, "in order to find a defendant guilty of this crime, it is necessary to find that there was an actual intent to kill." *People v. Taylor*, 422 Mich. 554, 567, 375 N.W.2d 1, 7 (1985) (citations omitted). Petitioner's counsel advised him that because the victim was injured below the waist, the prosecution could not establish the element of intent.

Counsel was wrong. The nature of the victim's wounds are not a dispositive consideration in determining whether the accused possessed an intent to kill. *See People v. Brown*, 159 Mich. App. 428, 432, 407 N.W.2d 21, 23 (1987) (rejecting defendant's argument that no rational jury could have inferred his intent to kill because he only inflicted a "superficial wound" onto the victim's neck, and noting that "[a] corpse is not necessary to establish the requisite intent"); *People v. Cochran*, 155 Mich. App. 191, 194, 399 N.W.2d 44, 45 (1986) (holding that defendant could be found guilty of assault with intent to murder when he fired one shot into the air). Instead,

> the jury 'may draw the inference, as they draw all other inferences, from any facts in evidence which to their minds fairly prove its existence.' And in considering the question they may, and should take into consideration the nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made.

*Taylor*, 422 Mich. at 568, 375 N.W.2d at 8.

11

Here, the evidence introduced during the preliminary examination (at which petitioner was represented by McClain) indicated that petitioner used a gun, from short-range, and fired multiple shots at the victim as she was fleeing. The evidence introduced at trial was substantially similar to the testimony from the preliminary examination. The most significant change to the evidence introduced at the preliminary examination was the addition of Mundy's medical records. But the medical evidence supported, rather than refuted, an inference of intent to kill. A wound to the body just below the waist jeopardizes many life-sustaining organs, and Mundy's emergency room physician noted that her injuries were life threatening. As seen from the result in petitioner's trial, this evidence was in fact legally sufficient to convict a defendant of assault with intent to commit murder.

Thus it is clear that counsel informed petitioner of an incorrect legal rule. Further, counsel focused on that incorrect legal rule in advising petitioner not to accept the state's plea offer. Providing such erroneous advice in the face of settled Michigan law is obviously deficient performance. *See Padilla,* --- S. Ct ----, 2010 WL 1222274, at *9 (noting that *Strickland*'s application to affirmative misadvice is settled); *Dando v. Yukins*, 461 F.3d 791, 798-99 (6th Cir. 2006) (finding an attorney rendered deficient performance when he provided advice that was "flatly incorrect"); *Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003) (holding that providing "patently erroneous" legal advice is deficient performance); *Magana*, 263 F.3d at 550 (holding that counsel's "complete ignorance of the relevant law under which his client was charged, and his consequent gross misadvice to his client regarding the client's potential prison sentence, certainly fell below an objective standard of reasonableness under prevailing professional norms"); *Blackburn v. Foltz*, 828 F.2d 1177, 1182 (6th Cir. 1987) ("Mr. Girard's recitation of the law . . . was clearly wrong . . . and

12

cannot be said to constitute reasonable strategy."); *see also McAdoo v. Elo*, 365 F.3d 487, 499 (6th Cir. 2004) (stating that if counsel incorrectly advised petitioner about maximum prison sentence before a guilty plea, a petitioner's "argument that his counsel's performance was deficient may have merit"). The state court's conclusion to the contrary is unreasonable.

It is important to note that this is not a case where petitioner's counsel merely offered a prediction about the outcome of the trial, which is how respondent attempts to frame the issue on appeal. In the evidentiary hearing before the state trial court, both petitioner and his counsel testified – and the state trial court found, *see* 28 U.S.C. § 2254(e)(1) – that counsel informed petitioner that a conviction for assault with intent to commit murder "could not" occur given the medical evidence. At the post-trial hearing, McClain testified that the assault with intent to commit murder charge "could not be supported by the evidence," (R. 20, Tr. at 15), petitioner testified that he was told that a jury "couldn't find [him] guilty of the charge [of assault with intent to commit murder] because the woman was shot below the waist," (*id.* at 31), and the trial court concluded that petitioner and his counsel "were convinced that [conviction of assault with the intent to murder] couldn't occur." (*id.* at 74.) If something "could" happen, then it is possible, however unlikely; if it "could not," it is impossible. *See, e.g.*, *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (holding that a conviction may stand only if "*any* rational trier of fact *could* have found the essential elements of the crime beyond a reasonable doubt" (first emphasis in original)). Counsel here advised petitioner that a conviction was not possible, even though it was. As the district court held, this erroneous advice was objectively unreasonable, and was indisputably so. The state court's decision to the contrary unreasonably applied *Strickland* and *Hill*.

2. *Prejudice*

13

Moreover, petitioner was prejudiced by his counsel's deficient performance. He testified that, had he known that a conviction for assault with intent to commit murder was possible, he would have accepted the state's offer. Nevertheless, although this evidence is uncontradicted, the state suggests that petitioner cannot show prejudice with his "own self-serving statement." Appellant's Br. at 27. There is no legal basis for us to impose a requirement that habeas petitioners provide additional evidence, and we have declined to create this rule in the past. *Magana*, 263 F.3d at 547 n.1; *see also Dedvukovic v. Martin*, 36 F. App'x 795, 798 (6th Cir. 2002). To do so would contradict the Supreme Court's holdings that petitioner need only establish a "reasonable probability" that the result would have been different. *See Hill*, 474 U.S. at 59. Moreover, even if we were to require independent corroboration, McClain confirmed that petitioner was open to pleading guilty, and the significant disparity between the prison sentence under the plea offer and exposure after trial lends credence to petitioner's claims. *See Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003) (collecting cases for the proposition that "the disparity between the plea offer and the potential sentence exposure as strong evidence of a reasonable probability that a properly advised defendant would have accepted a guilty plea offer"). In fact, the plea offer of 51 to 85 months was lower than petitioner would receive on the felon in possession of a firearm charge alone.

Respondent points to two facts that it believes casts doubt on petitioner's claim that he would have pleaded guilty but for counsel's advice. First, respondent points to petitioner's indication in a letter a desire to plead guilty to a lesser charge, and his assertion that he did not intend to kill Mundy. Petitioner's hope for a still more favorable plea deal (and attempt to negotiate one) does not mean he would never accept a higher offer. To the contrary, his interest in negotiating a plea shows that he was not set on going to trial. Petitioner's denial at one point in time that he intended to kill

14

the victim does not mean he could not later recant and admit his guilt to the court. Nor does it mean, as respondent contended during oral argument, that his plea could not be accepted by the court unless he admitted his intent to kill. Under Michigan law, the trial court could accept petitioner's plea to assault with intent to commit murder even were he to continue to disclaim an intent to kill. *People v. Haack*, 396 Mich. 367, 376-77, 240 N.W.2d 704, 709 (1976) (rejecting defendant's argument that his denial of an intent to kill precluded his conviction pursuant to his guilty plea to assault with intent to commit murder, stating "[d]isclaimers by the defendant during the plea taking . . . of intent to kill . . . do not preclude acceptance of a plea since on defendant's own recital a jury could properly infer the requisite participation or intent").

Respondent also argues that the fact that petitioner did not assert his desire to plead guilty at the pretrial conference belies his post-conviction claim that he would have accepted the plea but for his attorney's bad advice. This argument is wholly without merit. Petitioner does not contend that he wanted to accept the plea offer *despite* counsel's advice. He contends instead that he did not plead because his attorney misinformed him of the applicable law.

Despite the clear and uncontroverted evidence indicating that petitioner would have pleaded guilty and received a lower sentence but for his attorney's poor advice, respondent nevertheless contends that there is no prejudice because petitioner received a fair trial, which is all that the Sixth Amendment is meant to preserve. "No federal circuit case so holds," *Williams v. Jones*, 571 F.3d 1086, 1093 (10th Cir. 2009), and this circuit has consistently rejected such a myopic view of prejudice from a deprivation of the right to counsel. *United States v. Morris*, 470 F.3d 596, 600 (6th Cir. 2006); *Magana*, 263 F.3d at 547; *Turner v. State of Tennessee*, 858 F.2d 1201, 1206 (6th Cir. 1988), *vacated on other grounds*, 492 U.S. 902 (1989), *reaffirmed*, 940 F.2d 1000 (6th Cir. 1991).

15

The Supreme Court has "recognize[d] the importance of counsel during plea negotiations," *Bordenkircher v. Hayes*, 434 U.S. 357, 362 (1978) (citing *Brady v. United States*, 397 U.S. 742, 758 (1970)), and therefore the accused has the right to be represented by counsel during this "critical stage." *King v. Bobby*, 433 F.3d 483, 490 (6th Cir. 2006). In this case, petitioner was denied this right. As a result, he received a prison sentence four times greater than that promised by the plea deal. *See Lewandowski v. Makel*, 949 F.2d 884, 889 (6th Cir. 1991) ("In this case, it is clear what injury [petitioner] suffered. Instead of being sentenced for 15 to 25 years of incarceration, he received a sentence of life imprisonment without parole."). To say that there is no prejudice because the petitioner ultimately received a fair trial is to understate the value of plea bargaining – not just to the state, but also to defendants. As the Supreme Court has recognized:

> Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pre-trial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned.

*Santobello v. New York*, 404 U.S. 257, 261 (1971). Petitioner lost out on an opportunity to plead guilty and receive the lower sentence that was offered to him because he was deprived of his constitutional right to effective assistance of counsel. Thus, he has established prejudice. And, to the extent that the state court reached the question of prejudice,[4] its rejection of his *Strickland* claim

---

[4] We note again that it is highly unlikely that anything in either cursory ruling of the trial court or appellate court could be construed as addressing the prejudice prong of petitioner's ineffective assistance claim. In these situations, de novo review by federal courts is appropriate. *See Rompilla v. Beard*, 545 U.S. 374, 390 (2005) ("Because the state courts found the representation adequate, they never reached the issue of prejudice, and so we examine this element of the *Strickland* claim de novo.").

represents an unreasonable application of clearly established Constitutional law, as established by the Supreme Court.

*3. Remedy*

Finally, respondent contends that, even if petitioner has established a valid ineffective assistance of counsel claim, there is no clearly established Supreme Court law supporting the district court's remedy, and the remedy "violates separation of powers, federalism principles, and basic fairness principles."

The absence of clearly established law by the Supreme Court is not relevant when fashioning a habeas remedy. We have already concluded that petitioner is in custody in violation of the Constitution of the United States, *see* 28 U.S.C. § 2254(a), and the state court's conclusion to the contrary represents an unreasonable application of clearly established Federal law, as determined by the Supreme Court, *see* 28 U.S.C. § 2254(d)(1). We must now decide whether the district court's remedy for petitioner's unlawful custody is appropriate.

"[F]ederal courts have wide latitude in structuring the terms of habeas relief." *Demis v. Sniezek*, 558 F.3d 508, 515 (6th Cir. 2009) (citing *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)); *see also* 28 U.S.C. § 2243 (providing that the federal court "shall . . . dispose of the matter as law and justice require"); *Glenn v. Dallman*, 686 F.2d 418, 423 (6th Cir. 1982) (noting that federal courts in habeas cases are "to fashion relief as justice requires"). "Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison*, 449 U.S. 361, 364 (1981). Therefore, "'a federal district court . . . should give careful consideration to the appropriate demands of comity in effectuating its habeas corpus

17

decree.'" *Gentry v. Deuth*, 456 F.3d 687, 697 (6th Cir. 2006) (quoting *Parisi v. Davidson*, 405 U.S. 34, 46 (1972)). We review the district court's remedy for an abuse of discretion. *Id.*

The district court did not abuse its discretion. The relief chosen by the district court remedies the constitutional violation without unduly infringing upon the state's interests. The deprivation of effective assistance from counsel caused petitioner to reject a plea deal. Allowing petitioner an opportunity to assess and accept the plea deal, with the competent assistance of counsel, remedies this wrong. *See Lewandowski*, 949 F.2d at 889 ("The only way to effectively repair the constitutional deprivation [petitioner] suffered is to restore him to the position in which he would have been had the deprivation not occurred; namely, serving a sentence for 15 to 25 years."). A new trial does not. *Turner*, 858 F.2d at 1207 ("[A] new trial cannot remedy the specific deprivation suffered.").

While respondent does not identify any state interests offended by the relief ordered, there are such interests to be taken into account. Nevertheless, the district court's relief treads quite lightly upon these. The district court did nothing more than hold the state to a deal the state had previously offered.[5] In fact, the remedy chosen by the district court is the same remedy that the state courts employ in such cases. *People v. McCauley*, --- N.W.2d ----, 2010 WL 173597 (Mich. Ct. App. 2010); *People v. Carter*, 190 Mich. App. 459, 463, 476 N.W.2d 436, 438-39 (1991), *vacated on other grounds by* 440 Mich. 870, 486 N.W.2d 740 (1992). Significantly, respondent does not

---

[5]Although the district court indicates at one point that it is ordering "specific performance" of the plea deal, it later clarifies that it is simply granting a conditional writ, giving the state an opportunity to offer a plea deal or release the petitioner from custody. Thus, the prosecution has a choice: it need not offer petitioner the plea deal, but if it chooses not to, it may not continue to detain petitioner pursuant to a void judgment. *See Satterlee v. Wolfenbarger*, 453 F.3d 362, 368-69 (6th Cir. 2006).

identify an alternative remedy that it would prefer, apparently content to leave the constitutional violation unremedied. That option does not even attempt to balance the competing interests, assigning no weight to the constitutional rights of the accused. And even assuming that respondent's suggested "balance" of interests is a reasonable one, it hardly demonstrates that the district court's decision constitutes an abuse of discretion. To the contrary, we have repeatedly concluded that this relief is appropriate under such circumstances. *Satterlee*, 453 F.3d at 368-69; *Morris*, 470 F.3d at 600; *United States v. Allen*, 53 F. App'x 367, 373-74 (6th Cir. 2002); *Lewandowski*, 949 F.2d at 889.[6] We find no error in the remedy ordered by the district court.

## CONCLUSION

Accordingly, we AFFIRM the district court's grant of habeas relief.

---

[6]It is true that some of our cases permit the prosecution an opportunity to offer a plea different from the one previously offered. *Magana*, 263 F.3d at 553; *Turner*, 858 F.2d at 1208-09. In these cases, if the prosecution offers a plea deal in excess of its previous offer (or refuses to offer any plea deal), it must rebut a presumption of prosecutorial vindictiveness during a hearing before the district court. Respondent does not argue that this remedy would be preferable to the district court's election, so we do not consider this possibility further.