**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MARK BAERTSCHY,

      Petitioner - Appellant,

v.

RICK RAEMISCH, Executive Director, Colorado Department of Corrections, BARRY GOODRICH, Warden, Bent County Correctional Facility, PHIL WEISER, Attorney General, State of Colorado,[*]

      Respondents - Appellees.

No. 18-1252
(D.C. No. 1:17-CV-02048-RPM)
(Colo.)

**ORDER DENYING**
**CERTIFICATE OF APPEALABILITY**

Before **PHILLIPS**, **McKAY**, and **O'BRIEN**, Circuit Judges.

In 2002, Mark Baertschy, then a physics professor at the University of Colorado, began mentoring 10-year-old J.A. through a Boulder, Colorado, program for at-risk youths. He met with J.A. once or twice a week. Two years later, the relationship turned sexual. It started with Baertschy rubbing J.A.'s penis while J.A. watched pornography on Baertschy's computer; it progressed to oral and anal sex. The abuse ended in March

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Cynthia Coffman is replaced by Phil Weiser as a Respondent in this case.

2006, when J.A. reported Baertschy to his family, who in turn reported him to the police. For this conduct, Baertschy was charged in Colorado state court with (1) sexual assault on a child by one in a position of trust, a Class 3 felony, and (2) sexual assault on a child, pattern of abuse, also a Class 3 Felony. The State later added a third count, sexual exploitation of a child, a misdemeanor. Baertschy retained R. Scott Reisch to represent him.

In late September or early October 2006, the State offered Baertschy a plea deal: plead guilty to sexual assault on a child and sexual exploitation of a child in exchange for lifetime probation on the former and a sentence to be determined by the judge (an open sentence) on the latter. The deadline for acceptance was October 12.[1] Reisch, however, misstated the offer to Baertschy, telling him it required him to plead guilty to sexual assault on a child and Class 3 felony enticement of a child in exchange for lifetime probation on the former and an open but determinate sentence on the latter. He also failed to inform Baertschy of the deadline.

Baertschy proceeded to trial, where he testified he never had sexual contact with J.A. While he acknowledged the hand-grabbing incidents occurred, he claimed to have immediately pulled his hand away each time. The jury did not buy it and he was convicted of sexual assault on a child, pattern of abuse, a Class 3 felony. He was

_____

[1] The terms of the State's plea offer did not come from the prosecutor (who is now a state trial judge) or her notes. The only evidence of the State's plea offer comes from notes made by its victim advocate concerning a September 29, 2006 telephone conversation she had with J.A.'s parents. We assume, for purposes of these proceedings only, that the State's offer was as stated in the victim advocate's notes.

sentenced to an indeterminate term of 20 years to life in prison. The Colorado Court of Appeals (CCA) affirmed on direct appeal and the Colorado Supreme Court denied certiorari review.

Baertschy filed a state petition for post-conviction relief arguing, *inter alia*, Reisch was ineffective in failing to properly advise him of the State's plea offer including the deadline for accepting it. The state trial court held an evidentiary hearing. Relevant here, Reisch testified about Baertschy's lack of interest in taking a plea offer because he was "adamant" about being innocent: "From the time that we met to the time that we went to trial [and during trial] he never said I want a deal, get me a deal, I want a better deal or a different deal. It was I'm innocent." (R. Vol. 2 at 241, 298.) Baertschy, on the other hand, testified to having wanted to pursue a better deal but, if unsuccessful, he would have accepted the offer outlined to him by Reisch.

The state trial judge decided Reisch's advice concerning the charges and possible penalties "probably met the minimum standards" of professional competence. (R. Vol. 2 at 406.) However, he found Reisch to have failed to communicate the plea offer deadline to Baertschy and that failure fell below the "objective standard of reasonableness," satisfying the first prong of *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). (*Id*. at 407.) Nevertheless, the judge decided Baertschy had failed to establish he was prejudiced as a result. *See id*. at 687 (to state an ineffective assistance of counsel claim, petitioner must show both that "counsel's performance was deficient" and "the deficient performance prejudiced the defense"). Relevant here, he found Reisch's testimony that Baertschy "never would have accepted a plea bargain" to be "credible" and Baertschy's

- 3 -

testimony to the contrary "not credible" and "impossible to believe." (R. Vol. 2 at 408, 411, 420.) The CCA affirmed and the Colorado Supreme Court denied certiorari review.

Baertschy then brought his ineffective assistance of counsel claim to federal court via a counseled 28 U.S.C. § 2254 petition.[2] The district judge assumed Reisch was deficient in misstating the plea offer and failing to inform Baertschy of the deadline for accepting it. Nevertheless, he decided the state courts' collective decision that Baertschy was not prejudiced by these deficiencies to be neither "contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," nor "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2). In so concluding, he accepted as correct the state trial judge's credibility determination, which the CCA did not disturb. The judge denied a certificate of appealability (COA); Baertschy renews his request for a COA with this Court.

A COA is a jurisdictional prerequisite to our review of a petition for a writ of habeas corpus. 28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To obtain one, Baertschy must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He must establish that "reasonable jurists could debate whether . . . the petition should have been resolved [by the district court] in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks

---

[2] He continues to be represented by counsel in this putative appeal.

- 4 -

omitted).

In deciding whether to grant a COA, we incorporate the deferential treatment of state court decisions required by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See Davis v. McCollum*, 798 F.3d 1317, 1319 (10th Cir. 2015). Because the state courts ruled on the merits of Baertschy's claims, he is entitled to relief under AEDPA "only if [their] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or was 'based on an unreasonable determination of the facts in the light of the evidence presented in the State court proceeding.'" *Id*. (quoting 28 U.S.C. § 2254(d)(1),(2)). "Thus, the decision whether to grant [Baertschy's] COA request rests on whether reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong in light of the deference owed to the [state courts'] adjudication of [his] claims." *Howell v. Trammell*, 728 F.3d 1202, 1225 (10th Cir. 2013) (quotation marks omitted).

Baertschy has a tough row to hoe. The state trial judge's credibility determination, which the CCA did not disturb, must be accepted as correct in these proceedings absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1) ("In a [§ 2254 proceeding], a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *Ellis v. Raemisch*, 872 F.3d 1064, 1071 n.2 (10th Cir. 2017) (stating "[c]redibility findings are ones of fact" presumed to be correct under § 2254(e)(1)). Undaunted, Baertschy claims we are not bound by the state

courts' prejudice decision for two reasons. First, it is "contrary to" Supreme Court precedent. 28 U.S.C. § 2254(d)(1); *Trammell v. McKune*, 485 F.3d 546, 550 (10th Cir. 2007) ("AEDPA's deferential standard does not apply if the state court employed the wrong legal standard in deciding the merits of the federal issue." (quotation marks omitted)). Second, the record does not support it.

A. *"Contrary to" Supreme Court Precedent*

In his written order denying post-conviction relief, the state trial judge stated: "A defendant must prove by a *preponderance of the evidence* both that counsel's performance was deficient, *and that the deficient performance prejudiced the defense*." (R. Vol. 2 at 418 (emphasis added).) On appeal from that denial, the CCA stated: "Convictions are presumed valid; it is a defendant's burden to prove otherwise by a *preponderance of the evidence*." (*Id*. at 472 (emphasis added).) Baertschy argues that requiring him to prove prejudice by a preponderance of the evidence is a higher standard than that required by *Strickland* and *Missouri v. Frye*, 566 U.S. 134 (2002). He is correct. "To show prejudice . . . where a plea offer has lapsed or been rejected because of counsel's deficient performance, [a] defendant[] must demonstrate a *reasonable probability* [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." *Frye*, 566 U.S. at 147 (emphasis added); *see also Strickland*, 466 U.S. at 694 ("[To establish prejudice,] [t]he defendant must show that there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (emphasis added)). But that does not end the matter.

As the district judge aptly decided, while the state trial judge and CCA generally referred to a preponderance of the evidence standard, both correctly recited and applied the reasonable probability standard in addressing the evidence. The state trial judge's single reference to the preponderance of the evidence standard appeared in his written order, which also correctly recited (four times) the "reasonable probability" standard. In his oral decision, which preceded the written order and was announced directly after the evidentiary hearing, he cited only the "reasonable probability" standard. Critically, he concluded: "So when I assess *whether or not there was a reasonable probability that Mr. Baertschy would have accepted a plea agreement*, the evidence indicates that there was not." (R. Vol. 2 at 412 (emphasis added).) Similarly, the CCA only once mentioned the preponderance of the evidence standard and, despite that general reference, correctly stated:

> [T]o establish prejudice, a defendant must show that there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A *reasonable probability* means a probability sufficient to undermine confidence in the outcome. The word probability does not require a defendant to show that the deficient performance more likely than not altered the outcome of the case.
> In the context of a decision of whether to plead guilty, a defendant must demonstrate there is a *reasonable probability* that, but for counsel's errors, he would have accepted the plea offer rather than going to trial.

(R. Vol. 2 at 473-74 (emphasis added) (citations and quotation marks omitted).)

In a similar vein, Baertschy claims we owe no deference to the state courts' prejudice decision because both the state trial judge and CCA required him to provide objective evidence corroborating his post-conviction testimony that he would have accepted the plea offer. He claims such requirement is contrary to *Lafler v. Cooper*, 566

U.S. 156 (2012). This argument is ironic, given his telling the state trial judge and CCA that such corroborating evidence was necessary.[3] (R. Vol. 1 at 182; Vol. 2 at 464.) Setting that aside, however, we cannot say that requiring such corroborating evidence is "contrary to" *Lafler*.

A state-court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The issue in *Lafler* was the quantum of evidence a defendant must produce to establish prejudice when counsel's ineffectiveness results in him rejecting a plea offer but he is later convicted at trial. 566 U.S. at 163. The Court concluded he must show a reasonable probability that, but for counsel's unprofessional errors, (1) "the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)," (2) "the court would have accepted its terms," and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id*. at 164. In so concluding, it rejected the argument that "there can be no finding of *Strickland* prejudice arising from plea bargaining if the defendant is later convicted at a fair trial." *Id*.

---

[3] Judicial estoppel does not apply, however, because it usually applies only to factual positons, not legal ones. *See United States v. Villagrana-Flores*, 467 F.3d 1269, 1278-79 (10th Cir. 2006).

The Court then applied its prejudice standard to the facts and concluded Lafler had "shown that but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea." *Id*. at 174. For that proposition, it simply cited the Sixth Circuit's underlying decision concluding Lafler had established prejudice. *Id*. (citing *Lafler v. Cooper*, 376 F. App'x 563, 571-72 (6th Cir. 2010) (unpublished)). Looking to the Sixth Circuit's prejudice decision shows the court to have relied on Lafler's uncontradicted post-conviction testimony that he would have accepted the plea offer absent his attorney's ineffectiveness. 376 F. App'x at 571. It declined to require him to provide additional evidence corroborating his testimony. *Id*. Even if independent corroboration was necessary, the Sixth Circuit concluded Lafler had provided it because his attorney confirmed Lafler's openness to pleading guilty and "the significant disparity between the prison sentence under the plea offer and exposure after trial lends credence to [Lafler's] claims." *Id*. at 572.

The Supreme Court's favorable citation to the Sixth Circuit's underlying prejudice decision, which declined to require a defendant to provide more than his own self-serving post-conviction testimony to satisfy the prejudice prong, hardly amounts to a universal standard. This is especially true where the Sixth Circuit relied on multiple grounds in deciding Lafler had established prejudice, including that his testimony, unlike Baertschy's, was <u>uncontroverted</u>. Nevertheless, we need not definitively decide the issue. Even if the state courts acted "contrary to" *Lafler* in requiring Baertschy to provide evidence corroborating his testimony, their prejudice decision was not based on Baertschy's testimony being self-serving and uncorroborated but rather on the state trial

- 9 -

judge's finding that Reisch's testimony that Baertschy would not accept a plea deal was credible and Baertschy's testimony to the contrary was not. That credibility determination deserves a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1). It is Baertschy's burden to rebut it by clear and convincing evidence. *Id*. This leads us to Baertschy's second argument.

B. *Clear and Convincing Evidence*

Although not framed in such terms, Baertschy basically contends clear and convincing evidence demonstrates the state trial judge's credibility determination to be wrong. He tells us the record supports his testimony about his willingness to accept the plea offer had Reisch accurately described its terms and informed him of the deadline. He points to an April 2006 "suicide note"[4] and a letter he penned to Reisch in November 2006, which he claims demonstrate he was admitting guilt throughout Reisch's representation of him. He also says Reisch's October 12, 2006 letter to him incorrectly outlining the State's plea offer shows he was willing to accept a plea offer because he did not outright reject the offer but instead decided to think about it. Finally, he relies on the substantial disparity in sentences as evidence he would have accepted the plea offer but for Reisch's deficient performance. According to him, the State's plea offer (a minimum of ten years of probation and a maximum of 18 months in jail) was substantially less than what he would have received and did receive at trial (a minimum of 20 years in prison

---

[4] Shortly after his arrest and release on bond, Baertschy retreated to the mountains and composed what he referred to as a "suicide note . . . except . . . that [he] didn't really have any plans or means to actually . . . carry [a suicide] out." (R. Vol. 2 at 367.)

- 10 -

and no guarantee he will ever be paroled).  The state trial judge saw it differently and so do we.

The April 2006 "suicide note" and the November 2006 letter blamed J.A. for seducing him.[5]  We agree with the state trial judge; they do not "indicate the type of acceptance of responsibility or desire for a plea agreement or fear of going to trial" necessary to show his desire to accept a plea bargain.  (R. Vol. 2 at 410.)  Moreover, as the state trial judge found, Reisch's October 12 letter "implies that [Baertschy] had not accepted the plea bargain that had been offered" and encourages "Baertschy to consider

---

[5] In the "suicide note," he claimed J.A. "seduced" him.  (R. Vol. 3 at 531.) While he admitted he "should take some responsibility," he did so only because he "allowed [himself] to be seduced."  (*Id.*)  Moreover, while he said "I definitely did wrong," he again blamed J.A.: "[N]othing improper would have ever happened if it were not for [J.A.'s] deliberate attempts to make it so."  (*Id.*)  He repeated the same refrain in the November 2006 letter:

> [J.A.], completely by his own initiative, aggressively and very persistently worked to establish a sexual relationship with me.  Although he did succeed in creating sexual contact on several occasions, he never achieved the level that he had fantasized about despite his repeated attempts to escalate the sexual activity between us.  Throughout this time I consistently tried to focus our relationship on wholesome, constructive activities but [J.A.] resisted nearly all of these attempts.

> [J.A.]'s initial accusations against me were distorted by his desire to continue to conceal several deeply embarrassing facts about himself and his own activities as well as by his still-active and very graphic sexual fantasies.  [J.A.]'s mother further altered his story to shift more blame on to me and to set me up as a scapegoat for [J.A.]'s illicit activities that were done away from my presence.  The professional investigators also distorted [J.A.]'s story to portray him more as a classic victim and to make the story better fit a preconceived stereotype.

(*Id.* at 532.)

[it]." (*Id*. at 412.) Finally, the state trial judge concluded that while there was some disparity between the sentence he would have received under the plea offer and the sentence he faced proceeding to trial, it was not as substantial as he claimed. That is because Reisch "credibl[y]" testified that his primary concern with the plea offer was the lifetime probation sentence: "My concern was that in six months Mr. Baertschy would be right back before the Court [facing a potential life imprisonment sentence] for not being able to complete the offense specific treatment [because he denied the allegations]." (R. Vol. 2 at 230, 235, 409.)

Taking a different tactic, Baertschy attacks the state trial judge's credibility determination on several grounds. First, he argues we are not bound by it because it was "inextricably intertwined" with his legal errors, *i.e.*, requiring him to (1) prove prejudice by a preponderance of the evidence and (2) provide evidence corroborating his testimony. (Baertschy's Op. Brief & Request for COA at 49.) But, as we have already explained, the state trial judge recited and applied the correct reasonable probability standard in concluding Baertschy had not shown prejudice. And, as we will explain later, his credibility determination was made separate and apart from his discussion of the evidence Baertschy claimed corroborated his testimony.

Second, Baertschy claims Reisch's testimony was "nothing but his opinion, which itself is nothing more than speculative hindsight since Mr. Baertschy was never given the opportunity to accept the real offer." (*Id*. at 50.) Similarly, he contends Reisch cannot be believed given his "utter failure and refusal [during the post-conviction proceedings] to appreciate his demonstrated ineffectiveness." (*Id*. at 51.) But Reisch admitted that at the

time Baertschy was charged in 2006, Class 3 felony enticement of a child (which is what Reisch told Baertschy he would have to plead to under the offer) carried an indeterminate sentence of a minimum of 8-24 years and a maximum of life in prison. As such, he eventually conceded the plea offer he outlined to Baertschy did not "make sense" as one cannot simultaneously receive lifetime probation on the sexual assault on a child charge and also be sentenced to a lengthy term of imprisonment for enticement. (R. Vol. 2 at 249.) Yet, according to Reisch's testimony, not all felony enticements are subject to an indeterminate sentence and he and the prosecutor were "going to try and work something out" so Baertschy would not receive an indeterminate life sentence on the enticement charge. (R. Vol. 2 at 250.) On the other hand, he conceded to having perhaps mistakenly referred to enticement rather than exploitation in his October 12 letter to Baertschy explaining the plea offer but noted (correctly) that the penalties outlined in the letter were consistent with those in the State's offer. But all this matters not.

We have presumed Reisch was ineffective in misinforming Baertschy of the terms of the State's offer as well as in failing to inform him of the deadline for accepting it. The issue is whether Baertschy has established prejudice; in other words, whether he has shown a reasonable probability he would have accepted the plea offer had it not been misstated and had he been informed of the deadline. That he has failed to do. Critically, Reisch did not testify that Baertschy was not interested in taking the offer presented to him (the deficient offer). Rather, he testified Baertschy was not interested in taking any offer. And it was that testimony which the state trial judge found to be credible and which we presume is correct. Baertschy has yet to convince us otherwise, as he is

- 13 -

required to do.

Third, Baertschy argues Reisch's testimony is not entitled to belief simply because he is a lawyer. This is a nonstarter. Nothing indicates the state trial judge considered Reisch credible due to his status as a lawyer.

Finally, grasping at straws, Baertschy argues the state trial judge did not make a true credibility determination because it was not based on Reisch's demeanor but rather on the record and the alleged lack of evidence to corroborate Baertschy's testimony. The state trial judge did not explicitly mention demeanor as a basis for his credibility determination. In any event, while we defer to a trial judge's credibility determination in part because he is in the best position to judge a witness's demeanor and tone of voice, other factors weigh in a judge's decision to find a witness's testimony credible. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985); *Cannon v. Trammel*, 796 F.3d 1256, 1272 (10th Cir. 2015). For example, "[d]ocuments or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Anderson*, 470 U.S. at 575.

In this case, the state trial judge's credibility determination was largely based on Reisch's testimony being consistent with his correspondence and notes, including those from a July 5, 2006 telephone conversation between Reisch and Baertschy. Those notes indicate Baertschy wanted to fight the charges because he had "too much to loose

- 14 -

[sic]!!!!"[6] (R. Vol. 3 at 533.)  Moreover, as we have already explained, the state trial

judge found Reisch's October 12, 2006 letter to Baertschy outlining the State's plea offer

to imply that Baertschy had not accepted the offer and Reisch encouraging him to

consider it.[7]  And, what the state trial judge found "most telling" was a November 16,

2006 letter from Reisch to Baertschy addressing trial matters, which concluded:

> As we have discussed, it is my opinion that this case boils down to who are
> [the jurors] going to believe—either you or [J.A.].  As we've talked about, I
> believe you will be more credible than [J.A.] given how [J.A.] will present
> in front of a jury.  *You have expressed to me that you are innocent and,
> therefore, you will not accept an offer.*  The reality of it is that we need to
> try this case and have the matter resolved.

(R. Vol. 2 at 412, Vol. 3 at 667-68.)[8]

Baertschy has provided no evidence, let alone clear and convincing evidence,

calling into question the state trial judge's credibility determination.  The district judge

properly accepted it as correct.  And that credibility determination dooms any claim in

these proceedings that Baertschy was prejudiced by Reisch's deficient performance.

What this case comes down to is a clear case of buyer's remorse, which does not entitle

---

[6] Baertschy had "much to lose" whether he accepted the offer or proceeded to trial because a conviction, whether by plea or by trial, would result in him having to register as a sex offender.  The only way to avoid that result was a dismissal of the charges or an acquittal.  According to Reisch, Baertschy would only have been satisfied prior to trial with a "dismissal."  (R. Vol. 2 at 241.)

[7] The letter stated in pertinent part: "As we discussed, please consider our conversations regarding the pros and cons [of the offer] . . . ."  (R. Vol. 3 at 538.)

[8] Baertschy attacks the evidentiary value of this letter because it "reeks of self-preservation and an attempt [by Reisch] to cover for his mistake."  (Baertschy's Op. Br. & Request for COA at 46.)  But nothing in the record or letter itself indicates Reisch had such ulterior motive in writing the letter.

Baertschy to relief.

C. *Conclusion*

The state trial judge believed Reisch over Baertschy in concluding Baertschy had not established he was prejudiced by Reisch's deficient performance. The district judge accepted this credibility finding as correct because Baertschy had not rebutted it either legally or factually. Because that result is not reasonably debatable, we **DENY** a COA and **DISMISS** this matter.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge