**[J-35A-2023 and J-35B-2023]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 32 WAP 2022 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court entered October 8, |
| | : | 2021, at No. 348 WDA 2020, |
| v. | : | reversing the Order of the Court of |
| | : | Common Pleas of Washington |
| | : | County entered February 10, 2020, |
| JESSICA RIZOR, | : | at No. CP-63-CR-0002637-2004, |
| | : | vacating the Judgment of Sentence |
| Appellee | : | entered June 5, 2008, and |
| | : | remanding. |
| | : | |
| | : | SUBMITTED: April 4, 2023 |
| | | |
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 33 WAP 2022 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered October 8, |
| | : | 2021, at No. 348 WDA 2020, |
| v. | : | reversing the Order of the Court of |
| | : | Common Pleas of Washington |
| | : | County entered February 10, 2020, |
| JESSICA RIZOR, | : | at No. CP-63-CR-0002637-2004, |
| | : | vacating the Judgment of Sentence |
| Appellant | : | entered June 8, 2008, and |
| | : | remanding. |
| | : | |
| | : | SUBMITTED: April 4, 2023 |

**OPINION**

**JUSTICE DONOHUE**                                          **DECIDED: NOVEMBER 22, 2023**

This case arises out of a Post Conviction Relief Act[1] petition filed by Jessica Rizor ("Rizor") in which she alleged that trial counsel provided inadequate advice with regard to a plea offer. According to Rizor, her trial counsel's inadequate advice led her to proceed to a trial - where her life sentence was all but assured - in lieu of accepting a plea offer that would have resulted in a five and a half to thirty-year sentence.[2] The Superior Court agreed and reversed the PCRA court order denying relief and remanded "for a new trial or entry of a plea."[3] The Commonwealth insists that the PCRA court correctly denied relief and that the Superior Court's decision rested on a faulty foundation which assumed that trial counsel provided ineffective assistance rather than presuming the opposite. The Commonwealth further believes that the Superior Court improperly ignored the PCRA court's credibility determinations. This Court granted review to address whether the Superior Court erred in reversing the PCRA court's denial of relief and, if not, the appropriateness of the remedy granted by the Superior Court.[4] As set forth below, we agree with the Commonwealth. We find that the Superior Court erred in reversing the PCRA court order denying relief where Rizor has failed to establish a reasonable probability that but for counsel's alleged deficient advice, she would have accepted the

---

[1] 42 Pa.C.S. §§ 9541-9546 ("PCRA").

[2] Rizor raised six issues before the Superior Court. Rule 1925(b) Statement, 3/17/2020, ¶¶ 1-6; Rizor's Superior Court Brief, at 6-7; *Commonwealth v. Rizor*, 266 A.3d 623, 2021 WL 4704669, *3 (Pa. Super. 2021) (non-precedential decision). In granting relief, the Superior Court declined to address the admissibility of trial counsel's out-of-court statements admitting ineffectiveness to another attorney and the correctness of the legal standard applied by the PCRA court given that resolving those issues would not have changed its grant of relief. *Id.* at *5 n.8. These claims remain outstanding.

[3] *Rizor*, 2021 WL 4704669, at *5.

[4] According to Rizor, consistent with *Commonwealth v. Steckley*, 128 A.3d 826 (Pa. Super. 2015) and *Lafler v.* Cooper, 566 U.S. 156 (2012), this Court should reverse the relief granted by the Superior Court and instead remand for the PCRA court to accept Rizor's plea to the original plea offer and sentence her accordingly.

plea deal. We therefore vacate the Superior Court's judgment and remand to that court to address Rizor's outstanding challenges.

We set forth the facts of the case pertinent to the appeal. In 2004, Rizor concealed from family and co-workers the fact that she was pregnant. Even Rizor's mother and husband, with whom she lived, were kept in the dark about the pregnancy. Early in the morning the day following Thanksgiving 2004, Rizor went to the bathroom of her home and gave birth to a full-term baby girl. She then placed the baby in plastic bags where the baby subsequently died. Rizor's husband found the deceased baby after Rizor insisted that he take the garbage out of the house. He alerted Rizor's mother, who called 911 and an investigation ensued. The Medical Examiner performed an autopsy and discovered that the baby was born alive before dying by asphyxiation. Rizor gave a written statement to police, wherein she detailed the events surrounding the incident. *Rizor*, 2021 WL 4704669, *1 (internal citations omitted). Rizor was charged with murder and related crimes.

In the four years leading up to trial, Rizor was examined by multiple mental health professionals at the behest of her trial counsel, Robert Brady, Esquire ("trial counsel"),[5] and once pursuant to a request by the Commonwealth. Trial counsel's defense strategy was to present a mental health defense through the testimony of Dr. Michael Crabtree and Dr. Laszlo Petras. Trial counsel indicated, albeit very imprecisely, that the expert testimony of Dr. Crabtree and Dr. Petras would prove that Rizor neither premeditated the killing of the baby nor acted with malice in bringing about the baby's death.[6] At points,

---

[5] Rizor was represented by two attorneys at trial. However, for reasons unclear from this record, she only raises the ineffectiveness of Attorney Brady.

[6] *See, e.g.,* N.T., 3/4/2008, at 22 (stating that he intended to present a diminished capacity defense); *id.* at 56-57 ("The defense is her state of mind and with her illness she is incapable of formulating the necessary requirements for a finding of either homicide, third degree murder or voluntary manslaughter."); *id.* (suggesting he was going to argue (continued…)

trial counsel framed this as a diminished capacity defense, which, pursuant to the law, would operate to reduce first degree murder to third degree murder.[7] However, trial counsel also maintained that presenting the testimony would support reducing the homicide to involuntary manslaughter.[8] According to counsel, expert testimony regarding

---

that she had a mental infirmity "that would put [her] in a position where [she] would respond differently or may explain illogical responses to stimuli"); N.T., 3/10/2008, at 584-85 ("[I]t is the defense's position that this is an involuntary manslaughter case; that the death of the child was a result of an accident or a lack of action or appropriate action or misaction on the part of Jessica Rizor.").

[7] To establish a diminished capacity defense, a defendant must prove that her cognitive abilities of deliberation and premeditation were so compromised, by mental defect or voluntary intoxication, that she was so unable to formulate the specific intent to kill. *Commonwealth v. Hutchinson*, 25 A.3d 277, 312 (Pa. 2011) (citing *Commonwealth v. Rainey*, 928 A.2d 215, 237 (Pa. 2007)). "A defense of diminished capacity negates the element of specific intent, and thus mitigates first-degree murder to third degree murder." *Commonwealth v. Clemons*, 200 A.3d 411, 465 (Pa. 2019) (internal citations omitted).

[8] In subsequent argument, trial counsel relied on *Commonwealth v. McCusker*, 292 A.2d 286, 290-91 (Pa. 1972) to establish the principle that the mental health evidence was relevant and admissible to establish manslaughter. In *McCusker*, this Court held that "[a]pplying the established principles of relevancy to a murder prosecution where a defendant asserts that he acted in the heat of passion, it seems clear that any evidence-lay or psychiatric-pertinent to that defense should be admissible." *Id.*

The prosecution sought a conviction for murder of the first degree, an intentional killing, "by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(a), (d). It is punishable by "death or a term of life imprisonment[.]" 18 Pa.C.S. § 1102(a). The prosecution also contemplated murder of the third degree, a felony of the first degree subject to a sentence "fixed by the court at not more than 40 years." 18 Pa.C.S. § 1102(d).

Trial counsel was seeking to reduce the murder to manslaughter which is punishable by not more than twenty years if voluntary, or not more than ten, if involuntary. 18 Pa.C.S. § 2503 (a), (c) (defining voluntary manslaughter as a felony of the first degree); 18 Pa.C.S. § 1103(1) (providing that a felony of the first degree is subject to "a term which shall be fixed by the court at not more than 20 years"); 18 Pa.C.S. § 2504(a), (b) (defining involuntary manslaughter as a felony of the second degree where the victim is under 12 years of age and in the care, custody or control of the person who caused the death); 18 Pa.C.S. § 1103 (2) (providing that a felony of the second degree is subject to a sentence "fixed by the court at not more than ten years.").

Rizor's depersonalization disorder[9] would explain that she did not lie when she said that she was not pregnant, but that her disorder caused her to disbelieve that she was pregnant.

The Commonwealth moved to preclude the expert mental health testimony on the grounds that it was inadmissible and did not meet the requirements for a mental health defense. The Commonwealth insisted that the defense failed to meet its burden of presenting the requisite "extensive psychiatric testimony establishing the defendant suffered from one or more mental disorders which prevented … her from formulating the specific intent to kill." N.T., 3/4/2008, at 23; *see also id.* at 38. Relying on *Commonwealth v. Cuevas*, 832 A.2d 388, 393 (Pa. 2003), the Commonwealth explained that the defense of diminished capacity is extremely limited, and if successful, reduces first degree murder to third degree murder only. N.T., 3/4/2008, at 23. It stated that the defense did not have a single psychiatric report purporting to provide an opinion about Rizor's inability to formulate the specific intent to kill, and thus there was no scientifically reliable evidence to meet the standard. *Id.* at 23-24, 41. While that motion was pending, the Commonwealth offered Rizor a five and a half to thirty-year sentence of imprisonment in exchange for a plea of guilty but mentally ill to third degree murder.

At a pretrial hearing that occurred after the jury was seated, the court addressed both the plea offer and the mental health evidence. First, the court began discussing the mental health evidence in chambers when Rizor was not present, but it did not resolve the issue during that discussion. N.T., 3/4/2008, at 8-47.[10] The hearing progressed to

---

[9] Trial counsel stated that this illness was important to explain why Rizor did not believe or recognize that she was pregnant, and there is research indicating that women who do not know they are pregnant experience dissociative or depersonalization disorder. N.T., 3/10/2008, at 571.

[10] The parties agree that the trial court did not preclude the evidence and that the admissibility of the mental health evidence was still under consideration at that point in (continued…)

the courtroom, and with Rizor present, the trial court conducted a colloquy regarding her rejection of the plea. *Id.* at 48-53. During the colloquy, the court reviewed the charges against Rizor as well as the possibility of a life sentence. *Id.* at 49. The plea offer was recited on the record, and Rizor confirmed that she rejected the offer. *Id.* at 50. She also confirmed that she had discussed the plea offer with her attorneys and her family. *Id.* The trial court's colloquy of Rizor included the following:

> Q. Ms. Rizor, of course, we haven't heard all of the evidence in this case by any means, but I can say from what I understand what will come in evidence in the next few days that it is very much possible that the jury could find you guilty of first degree murder. Do you understand that?
>
> A. Yes sir.
>
> Q. There may be a question of when you might be paroled on a third degree charge, but there is no likelihood you would be paroled if the jury comes back with that conviction. Do you understand?
>
> A. Yes sir.
>
> Q. Are you willing to take that risk?
>
> A. Yes sir.
>
> Q. Are you sure you're willing to take that risk?
>
> A. Yes.
>
> Q. I notice you're crying. Are you conflicted about that?
>
> A. No sir.

---

the proceedings. Rizor's Brief at 7; Commonwealth's Brief at 14. We observe that the trial court signaled that it was inclined to preclude the mental health evidence, but it also requested copies of the expert reports and case law to aid in its determination, thus illustrating that the issue was under consideration. N.T., 3/4/2008, at 43-44.

*Id.* at 51-52.  The trial court also confirmed with Rizor that she had adequate time to think over the plea offer, that she discussed her defense with her attorneys, and, when asked, she declined to raise any questions or bring anything to the court's attention.  *Id.* at 52-53.

Thereafter, the trial court issued a preliminary ruling precluding the admission of the mental health expert testimony.  *Id.* at 60-61.[11]  It was after Rizor rejected the offer that the trial court precluded the mental health evidence.  Rizor proceeded to a jury trial where trial counsel attempted to convince the jury that the baby was stillborn, and therefore, that Rizor did not kill the newborn.[12]

Rizor was convicted of first degree murder, concealing the death of a child, and abuse of a corpse.[13]  On June 5, 2008, she was sentenced to life imprisonment.  On direct appeal, the Superior Court affirmed the judgment of sentence, rejecting a claim that the trial court erred in precluding the mental health evidence. This Court denied Rizor's Petition for Allowance of Appeal.

On September 26, 2011, Rizor timely filed an uncounseled PCRA petition which she subsequently amended with the PCRA court's permission and the aid of counsel. PCRA Petition, 9/26/2011; First Amended PCRA Petition, 9/9/2013; Second Amended PCRA Petition, 10/4/2014.  In her second amended PCRA petition, she raised various claims of ineffective assistance of counsel, two of which are the primary focus of this

---

[11]  For purposes of the ineffectiveness claims which are discussed below, the chronology of events is relevant, though not dispositive of our resolution.

[12] The parties emphasize that, after the Commonwealth rested, trial counsel again sought to introduce psychiatric testimony as to Rizor's state of mind, but the trial court maintained its earlier ruling precluding the evidence.  N.T., 3/10/2008, at 601.  This fact does not impact our analysis of trial counsel's pretrial performance.

[13]  18 Pa.C.S. §§ 2502(a), 4303, 5510.

appeal.[14]  First, she alleged that trial counsel provided deficient advice with regard to the plea offer, a claim which she entitled: "failure to communicate with defendant, prepare for trial, review plea offer, and discuss sentencing guidelines[.]"  Second Amended PCRA Petition, 10/4/2014 ¶¶ 28-39 (capitalization removed).[15] She observed that a claim that counsel was ineffective in advising a defendant to reject a plea offer is cognizable under the PCRA.  *Id.* ¶ 39 (citing *Commonwealth ex rel. Dadario v. Goldberg*, 773 A.2d 126 (Pa. 2001)).  In support of this claim, she averred that trial counsel did not fully discuss with her "the requirements of the defense of diminished capacity, the applicable sentencing guidelines and/or mandatory sentences for the crimes charged, and the terms of the Commonwealth's plea offer."  *Id.* ¶¶ 36, 38 (alleging that trial counsel's file contains no memorialization of any plea discussions with the Commonwealth or any letter to Rizor regarding a plea).  She also averred that trial counsel specifically advised her and her parents that Rizor "would never set foot on state prison grounds[.]"  *Id.* ¶ 37.  She did not specifically aver that she would have accepted the plea offer if not for trial counsel's advice.  *Id.* ¶¶ 28-39.

Second, Rizor alleged that trial counsel was ineffective in failing to present a cognizable defense.  *Id.* ¶¶ 40-62 (entitling claim "failure to present a cognizable

---

[14]  Rizor was first represented by David DiCarlo, Esquire ("first PCRA counsel") until he withdrew from representation prior to the evidentiary hearing in June 2008.  Rizor was thereafter represented by Joshua Camson, Esquire ("PCRA counsel").

[15]  Her first amended PCRA petition comprised 134 paragraphs without any delineation of separate claims, thus leading to confusion about where one claim ends and the next begins.  First Amended PCRA Petition, 9/9/2013; *see e.g.,* Commonwealth's Answer to First Amended PCRA Petition, 4/1/2014, ¶¶ 42-54 (addressing together the rejection of the plea offer and the preclusion of the mental health evidence).  For instance, she asserted that trial counsel advised her to reject all plea offers, *id.* ¶¶ 37-38, and in the next paragraph jumped to the preclusion of the mental health evidence, *id.* ¶¶ 39-42. With permission of the court, she filed the second amended petition adding topic headings to the body of the petition.  *See* Motion to File Second Amended Petition, 9/30/2014, ¶ 6; PCRA Court Order, 10/1/2014.

defense"). According to Rizor, the record shows that at trial, trial counsel aimed to show that Rizor, due to a mental illness, did not know she was pregnant, and that she gave birth to a stillborn baby and did not commit homicide. She complained that this defense was inconsistent with trial counsel's statements pretrial that there was no dispute that the baby was born full term and was placed in a bag that was tied and placed in a garbage can. *Id.* ¶¶ 41-43. Next, she described how the Commonwealth sought to preclude the mental health evidence that trial counsel sought to introduce to support a diminished capacity or manslaughter defense. *Id.* ¶¶ 44-46. She recounted that the trial court's subsequent preclusion of evidence of her diagnosis dramatically limited Rizor's defense. *Id.* ¶¶ 49-50. She complained that trial counsel never informed her of the preclusion of the mental health testimony, *id.* ¶ 51, and instead continued to assure her that he would pursue the diminished capacity defense, *id.* ¶ 52. She alleged that she proceeded to trial in reliance upon trial counsel's "representation that she 'would never set foot in state prison' when the trial was over." *Id.* ¶ 53.

She acknowledged that the law accords defense counsel broad discretion, but that a decision is unreasonable when it is based on a misunderstanding of the applicable law. *Id.* ¶ 55. She contended that trial counsel "repeatedly ignored the admissible evidence tending to establish a defense to homicide because he did not understand the limited defense of diminished capacity." *Id.* ¶¶ 56-58 (recounting that a diminished capacity defense requires concession of general criminal liability, and it only applies to reduce first degree murder to third by disproving that the defendant premeditated the killing) (citing *Commonwealth v. Paolello*, 665 A.2d 439, 445 (Pa. 1995); *Commonwealth v. Bomar*, 826 A.2d 831 (Pa. 2003)). Rizor argued that such a defense is not available merely because a defendant lacked the ability to control her actions or acted impulsively. *Id.* ¶ 59 (citing *Commonwealth v. Travaglia*, 661 A.2d 352 (Pa. 1995)). She complained that trial counsel

never explained to her that her assertion that the baby was stillborn would preclude a diminished capacity defense and a manslaughter defense. *Id.* ¶¶ 60-61. She asserted that trial counsel was ineffective in insisting on continuing to pursue "this defense[16] when it was not available and [the trial court] had ruled before trial started that he could not present it." *Id.* ¶ 62.[17] First PCRA counsel subsequently withdrew from representation and was replaced by present PCRA counsel.

In its answer to Rizor's PCRA petition,[18] the Commonwealth insisted that Rizor failed to meet her burden of establishing that counsel was ineffective in advising her to reject the plea offer based on the trial record. It recalled the plea colloquy, where Rizor rejected the plea offer, citing it as evidence that Rizor "was aware of the plea offer, rejected it, and did so voluntarily, knowingly, intelligently, and with the effective assistance of counsel." Commonwealth's Answer to First Amended PCRA Petition, 4/1/2014, ¶ 49. The Commonwealth believed it relevant that during the plea colloquy Rizor did not bring any ineffectiveness issues to the court's attention. *Id.* ¶ 50. Further, the Commonwealth recounted that during the colloquy, the trial court reminded Rizor "that the

---

[16] It is not clear what "this defense" refers to, diminished capacity or manslaughter.

[17] Rizor subsequently filed a witness certification of trial counsel regarding a conversation between PCRA counsel and trial counsel in which trial counsel indicated that he was willing to testify regarding his representation of Rizor. Witness Certification of David J. DiCarlo (PCRA counsel) regarding trial counsel, 10/23/2014, at 1-2. He would testify, inter alia, that he possessed no evidence to contest the Commonwealth's theory that the baby was born full term; that he believed that the mental health testimony would lead to an acquittal or a manslaughter verdict, at worst; that he did not realize that his arguments to the jury that the baby was stillborn meant that the jury would not be able to consider manslaughter; and that he believes that if he had been better prepared and not committed these (and other) errors, the result of the trial would have been different. *Id.*

[18] The Commonwealth filed an answer to the first amended PCRA petition only. As noted above, see supra note 14, the answer addresses together the factual allegations supporting Rizor's claim that trial counsel was ineffective in advising her to reject the plea with the allegations supporting her assertion that trial counsel was ineffective in failing to present a cognizable defense.

Commonwealth's evidence had a high likelihood of conviction and the resulting sentences that could be imposed upon conviction." *Id.* ¶ 50; *see* N.T., 3/4/2008, at 48-53 ("Ms. Rizor, of course, we haven't heard all the evidence in this case by any means, but I can say from what I understand what will come in evidence in the next few days that is very much possible that the jury could find you guilty of first degree murder. Do you understand that?"). The Commonwealth also argued that the record showed that Rizor knew of the preclusion of the mental health evidence. *Id.* ¶ 51.

The PCRA court issued an opinion announcing its intention to dismiss Rizor's petition without an evidentiary hearing. PCRA Court Opinion, 7/16/2015. With regard to Rizor's first claim that trial counsel was ineffective for advising her to reject the plea offer, the PCRA court found that Rizor was adequately advised of the plea deal and rejected it. It observed that Rizor's allegations in the PCRA petition were contradictory. It pointed out that she claimed both that trial counsel did not review the plea offer with her and that trial counsel advised her to reject the plea. *Id.* at 11. The PCRA court also relied on the notes of the testimony from the plea colloquy as demonstrating that trial counsel discussed with her the charges and the plea offer. *Id.* at 16. Also based on the plea colloquy, the PCRA court found that Rizor acknowledged the possibility of receiving a life sentence and that she was satisfied with trial counsel's representation. *Id.* at 16.

In addressing this claim, the PCRA court recounted the discussion regarding the admissibility of the mental health testimony culminating in the preclusion of the mental health evidence. *Id.* at 15-16. The PCRA court stated that the Superior Court affirmed its preclusion of this evidence on appeal.[19] *Id.* at 16. The PCRA court did not explain

---

[19] On direct appeal, trial counsel continued to argue that the trial court erred in precluding the mental health evidence. Rizor's Superior Court Brief, 5/28/2009, 2009 WL 6324866 at *19-29. In fact, the Superior Court deemed the claim waived on appeal given that the expert reports were not included in the certified record. *Commonwealth v. Rizor*, 1128 WDA 2008, at 13 (Pa. Super. Aug. 27, 2010) (non-precedential decision). The Superior (continued…)

how that discussion was relevant to Rizor's rejection of the plea offer which occurred earlier in time. *Id.* at 15-16.

Next, the PCRA court addressed and rejected Rizor's claim that trial counsel was ineffective for failing to present a cognizable defense. *Id.* at 16. The court further characterized this claim as

> essentially a reiteration of the first allegation of ineffectiveness, in which she claims that counsel did not explain to her that her psychological and psychiatric reports did not amount to an insanity defense or a diminished capacity defense, and did not tell her that the trial court granted the Commonwealth's motion to preclude the admission of these reports.

*Id.* at 17. According to the PCRA court, Rizor complained that trial counsel pursued unavailable defenses while ignoring other admissible evidence that amounted to a defense. *Id.* In addressing this claim, the PCRA court recounted the evidence establishing that Rizor killed the baby then concealed the killing. *Id.* at 18. Then it stated that "counsel cannot be deemed ineffective for failing to present a cognizable defense where none existed." *Id.* It reasoned that defense counsel's duty "is to test the prosecution's evidence and to see that the defendant receives a fair trial, not to 'cut a defense out of whole cloth.'" *Id.*

Moreover, the PCRA court reasoned, to establish an ineffectiveness claim, the petitioner must prove that "a different result would have occurred had the errors not been committed." *Id.* (citing *Commonwealth v. Pierce*, 527 A.2d 973, 975-76 (Pa. 1987); *Commonwealth v. Wallace*, 724 A.2d 916 (Pa. 1999)). The PCRA court found that Rizor failed to establish prejudice, concluding with the following reasoning:

---

Court stated that even if the expert reports were available, it would nonetheless conclude that the trial court properly rejected the diminished capacity defense because Rizor did not concede liability, a prerequisite to advancing such a defense. *Id.* at 13-15.

> At no time did [Rizor] express a desire to accept a plea, to admit guilt or to take responsibility for her actions. It was clear, after the trial court's colloquy of [Rizor], … that [she] was not willing to admit that she had committed this terrible act. Moreover, in her PCRA petition, although she claims that she was not adequately informed by her trial counsel of the plea offers and the likelihood of prevailing at trial, which the record refutes, at no time does [Rizor] express that she would have accepted a guilty plea, had she been properly advised. Instead, [Rizor] argues the alternative, that had trial counsel been more effective, she may have been acquitted.

*Id.* at 18.[20]

Rizor filed an objection, asserting that the PCRA court failed to properly analyze "the effect of [trial counsel]'s advice and th[e PCRA c]ourt's ruling concerning mental infirmity evidence, and its effect on [Rizor]'s poorly counseled decision to reject the plea offer." Rizor's Objection to Notice of Intent to Dismiss, 8/12/2015, ¶ 3(a). Rizor alleged three issues of material fact that she claimed would entitle her to relief: (1) that trial counsel never explained the effect of the preclusion of the mental health evidence and the implications of her failure to concede the killing for a diminished capacity defense; (2) that trial counsel failed to explore and present testimony regarding a possible diagnosis of "denial of pregnancy[;]" and (3) that Rizor's mother, if called to testify, would have rebutted the Commonwealth's assertion that Rizor prepared for the baby's birth and anticipated killing the baby. *Id.* ¶ 3(b)(i)-(iii). She did not respond to the court's prejudice finding or aver that she would have accepted a guilty plea.

The PCRA court issued an opinion and order dismissing the PCRA petition and addressing Rizor's objections. PCRA Court Order, 2/5/2016. It reiterated that Rizor's assertions that trial counsel did not explain the diminished capacity defense or its

---

[20] Having rejected Rizor's first two ineffectiveness claims ((1) failure to advise Rizor to accept the plea and (2) failure to present a cognizable defense), the PCRA court then analyzed and rejected Rizor's remaining four claims, claims which she has since abandoned. *See* PCRA Court Opinion, 1/16/2020, at 10 (indicating that on remand PCRA counsel informed the court by letter that she is seeking relief only on these two issues).

implications are belied by the record of the plea colloquy, wherein Rizor acknowledged that she and trial counsel had discussed her defense at trial. *Id.* at 2 (citing N.T., 3/4/2008, at 48-53). Further, the court explained, such a defense requires a concession of liability, but Rizor "has never expressed a willingness to concede liability." *Id.* at 2-3. Such a concession was inconsistent with the trial strategy of arguing that the baby was stillborn, and according to the PCRA court, it could only achieve what Rizor was offered and rejected. *Id.* at 3.

Rizor timely appealed, arguing that the PCRA court erred in dismissing her petition without an evidentiary hearing given that there were genuine issues of material fact. *Commonwealth v. Rizor*, 2017 WL 2482941, *1 (Pa. Super. 2017) (non-precedential decision).[21] The Superior Court agreed that an evidentiary hearing was necessary, addressing together Rizor's two claims that but for trial counsel's deficient advice, she would not have rejected the plea offer and that trial counsel did not have a cognizable defense strategy. *Id.* at *1. The panel considered Rizor's arguments that the evidence against her was "insurmountable" and that "a competent attorney never would have advised her to risk trial." *Id.* Further, it noted Rizor's assertion that trial counsel repeatedly tried to present a diminished capacity defense despite the court's pretrial determination that evidence of Rizor's mental health was inadmissible. *Id.*

The panel observed that the PCRA court had rejected Rizor's argument on the grounds that, during the colloquy, Rizor had indicated that she was not pressured to reject the plea. However, according to the Superior Court, the issue was not whether Rizor was pressured, but instead, whether counsel gave bad advice about his purported ability to present a mental health defense. *Id.* at *2-3. The panel also observed that trial counsel's

---

[21] The PCRA court issued a Pa.R.A.P. 1925(a) opinion which contains the same analysis as its opinion issued in conjunction with its notice of intent to dismiss.

failure to present a cognizable defense is relevant to evaluating the reasonableness of counsel's advice to Rizor not to take the plea. More specifically, the court opined that "[w]ithout the ability to present any exculpatory mental health testimony, and no other line of defense evident from the transcripts, counsel would have no reasonable basis for rejecting the plea."[22] *Id.* at \*3. With respect to prejudice, the Superior Court stated that, had counsel advised Rizor to accept the plea offer, and had she accepted the offer, she would have received a sentence of five and a half to thirty years of incarceration rather than the life without the possibility of parole sentence she is serving. *Id.* In concluding, the panel recited the de novo standard of review for the PCRA court's legal conclusions. *Id.* at \*3 (citing *Commonwealth v. Hardcastle*, 701 A.2d 541, 542-43 (Pa. 1997)). It determined that Rizor "demonstrated a genuine issue of material fact based on the pleadings" and that "[t]he PCRA court abused its discretion in failing to hold an evidentiary hearing." *Id.* Therefore, the Superior Court panel vacated the PCRA court's order dismissing the petition and remanded for an evidentiary hearing. *Id.* at \*3.

Notably, the court conflated two distinct points in the record. As described above, Rizor first rejected the plea, then the trial court issued its ruling precluding the mental health evidence. However, the Superior Court panel's analysis of the issue suggests that trial counsel should have advised Rizor to accept the plea based on the preclusion of the mental health evidence, a ruling which had not yet issued. The panel stated:

> [Rizor] claims she believed trial counsel had a legally sound
> defense when she rejected the plea. The court's evidentiary

---

[22] The Superior Court also observed that the certified record contains a witness certification from first PCRA counsel regarding his conversation with trial counsel in which trial counsel admitted his ineffectiveness and expressed willingness to testify before the PCRA court. *Rizor*, 2017 WL 2482941 at \*3 (citing Amended Witness Certification of Robert Brady, filed 10/23/14, at 2). The court found that Rizor's averments alone were sufficient to warrant remand for an evidentiary hearing, but it also found that the witness certification "bears mentioning when evaluating the arguable merit of Appellant's ineffective assistance claim." *Id.*

ruling prior to trial eviscerated counsel's ability to present this defense. Without the ability to present any exculpatory mental health testimony, and no other line of defense evident from the transcripts, counsel would have no reasonable basis for rejecting the plea.

*Id.* at *3. This mistake confuses the procedural events leading up to trial. If Rizor's trial counsel's defense was entirely eviscerated and there was a plea deal on the table, certainly trial counsel had a duty to explain that to Rizor and to advise her to take the deal. However, that was not the reality. When the plea deal was addressed, the mental health evidence was still in dispute and the trial court had not issued an order precluding it.

Returning to the procedural history, on remand, the PCRA court scheduled an evidentiary hearing which ultimately took place on June 8, 2018. Only Rizor testified. Rizor testified regarding the plea discussions and her rejection of the plea. She explained that trial counsel discussed the plea deal with her on the morning of jury selection. She admitted that he advised her that the offer was for a sentence of five and a half to thirty years of imprisonment. N.T., 6/8/2018, at 50-51. She also acknowledged that trial counsel told her that she could be convicted of first or third degree murder, and she knew of the possibility of a life sentence, though she stated that "he didn't specify, you know, specifics as far as third degree goes." *Id.* at 47-48.

Rizor testified regarding the discussion she had with trial counsel regarding the plea offer: "He told me I had one more chance [to take the plea], if I wanted to take it I could." N.T., 6/8/2018, at 37-38. "I asked him if he thought we had a good chance of winning at trial. He said, absolutely. And I told him that if there was a chance, that I did want to take it to trial." *Id.* She admitted on cross-examination that trial counsel did not tell her that there was a 100% chance of beating the charges. *Id.* at 53-54. PCRA counsel asked her, "if [trial counsel] had told you, we have no chance of winning, how would that have affected your decision?" and she answered: "If I had no chance, I would have taken

the plea offer." *Id.* at 42. She testified that trial counsel never told her that she did not have a chance, not even after the trial court precluded that the mental health evidence. *Id.* On cross-examination, she acknowledged that "[t]here is always that chance" of being found not guilty and she was hoping for that chance. *Id.* at 54. Rizor also testified that she rejected the plea offer because trial counsel told her that she "would never set foot on state grounds." *Id.* at 40. She said that trial counsel "assured [her] that [she] would get something less than" the time offered in the plea offer. *Id.* at 42.

With regard to the mental health reports, Rizor admitted that prior to trial, she knew that expert mental health reports would not be introduced into evidence on her behalf. N.T., 6/8/2018, at 38-39. Further, she testified that her understanding was that the prosecution still could call those witnesses, and "if they did, then [trial counsel] would be able to question them." *Id.* at 39. She testified that trial counsel told her that the prosecution probably would call the expert witnesses, *id.* at 39-40, but she also admitted on cross-examination that there was nothing specific that made her think the Commonwealth would introduce the mental health evidence, *id.* at 56-58. In response to questioning by the PCRA court, she testified that by the end of trial, when she saw that no mental health expert testified from either side, she did not attempt to restart conversations with trial counsel about the plea deal. *Id.* at 69-70. She stated that she questioned trial counsel about why certain witnesses were not called, but that he assured her that "he had things under control." *Id.* Finally, she testified that she was under the impression that the plea offer was no longer available after she had rejected it on the record. *Id.* at 70.

The PCRA court scheduled another hearing for November 26, 2018, and ordered that trial counsel, who had since retired from the practice of law and left the jurisdiction, make himself available for the hearing. Despite this, trial counsel did not comply with the

court's order. Trial counsel was deemed unavailable, and so the PCRA court precluded testimony regarding the conversation between trial counsel and first PCRA counsel during which trial counsel purportedly admitted many of the allegations of his ineffective assistance. *See supra notes* 17, 22.

The PCRA court issued an opinion and order, indicating its intention to dismiss the PCRA petition. PCRA Court Opinion, 1/16/2020.[23] First, the court addressed the claim that counsel provided deficient advice with regard to the plea offer. It again found Rizor's allegations—that counsel failed to review the plea with her and also advised her to reject the plea because she "would never set foot on state grounds"—contradictory. *Id.* at 11. Further, the court reiterated its prior holding that the allegations are belied by the plea colloquy and the discussions of the preclusion of the mental health evidence. *Id.* at 11-16. The court explained,

> [a]s the record reflects, [trial counsel] did discuss the charges with [Rizor], as well as the plea bargain, which [Rizor] acknowledged when asked by the trial court. [Rizor] further acknowledged, while under oath, that she had discussed the plea bargain with trial counsel, the ramifications of not accepting the plea, including a sentence of life without parole, and that she was satisfied with counsel's representation. Moreover, the trial court informed [Rizor] that if she accepted a plea or was convicted, although she would receive credit for time served, she would serve the balance of her sentence in a state correctional facility, and parole, if eligible, would be subject to the Pennsylvania Board of Probation and Parole. During the PCRA hearing, [Rizor] admitted that she was being honest during the colloquy with the trial court and everything she told the trial court was true at that time.

*Id.* at 16 (internal citations to notes of testimony omitted). The PCRA court recounted Rizor's testimony from the evidentiary hearing, highlighting her admissions that she went to trial hoping for a chance of acquittal, but "she was fully aware that she could be

---

[23] The PCRA court styled this as a notice of intention to dismiss a PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907, although a hearing was held.

convicted and that the conviction could result in a life sentence[.]" *Id*. at 19. The PCRA court also highlighted Rizor's testimony that she was aware that the mental health experts had been excluded from testifying in her defense. *Id*.

The PCRA then stated:

> The court did not find credible [Rizor's] claims that she was uninformed at the time she rejected the plea offer, that she did not know that her mental [health] experts would not be permitted to testify, and that she would not have rejected the Commonwealth's plea offer had she known the defense mental health experts would not be permitted to testify.

*Id*. at 22. It recalled that the trial court had, in open court in Rizor's presence, explained that it was precluding the defense mental health experts' testimony because the reports did not constitute a legal defense, and that the testimony which may have impacted her behavior on the date of the incident was not admissible. *Id*. Further, the court observed, "[Rizor] admitted that she knew that the mental health reports would not be introduced on her behalf" before trial. *Id*. Additionally, even once it became clear that no expert mental health testimony was being offered on her behalf, "she expressed no desire to revisit the plea offer or inquire whether the plea offer was still available." *Id*.

Finally, the PCRA court cited Rizor's testimony from the PCRA evidentiary hearing in which she "admitted that she was speaking honestly when she was engaged in the colloquy with the trial court, just before trial." *Id*. It called upon her testimony from the colloquy in which she acknowledged that she had reviewed her defenses with trial counsel, she stated she was satisfied with their representation, and she answered in the negative when the trial court asked if there was anything else she wanted to bring to its attention during the colloquy. *Id*.

The PCRA court then addressed Rizor's claim that trial counsel failed to present a cognizable defense. *Id*. It stated that this claim was essentially a reiteration of her first claim, "in which [Rizor] claim[ed] that counsel did not explain to her that her psychological

and psychiatric reports did not amount to an insanity defense or a diminished capacity defense, and did not tell her that the trial court" precluded the reports. *Id.* at 23-24. The court concluded that this claim, too, was "refuted by the record." *Id.* at 24. Not recognizing that the mental health experts were precluded after the plea offer was rejected, it reiterated that it did not find credible Rizor's claims that she was uninformed at the time she rejected the plea offer and that she did not know that the mental health evidence was precluded. *Id.* The court pointed out that Rizor admitted that she knew of the preclusion of the mental health evidence and that she had discussed her defenses with her attorneys and stated during the colloquy that she was satisfied with their representation. *Id.*

Further, the PCRA court recapped the mental health evidence gathered and presented to it, then reiterated its determination that "none of the experts expressed the opinion that [Rizor] suffered from a condition which rendered her incapable of forming the specific intent to kill[,]" as the law requires. *Id.* at 26-27. The court stated that, given its preclusion of trial counsel's statements to first PCRA counsel, there was no evidence that trial counsel did not understand the diminished capacity defense. *Id.* Further, it read trial counsel's pretrial arguments about the purpose of the mental health testimony as demonstrating that he was aware of the limitations of the diminished capacity defense. *Id.* at 28 (citing N.T., 3/4/2018, at 58).

The PCRA court then stated that, even if it had accepted evidence that trial counsel did not understand the law regarding the relevant defenses, Rizor failed to establish prejudice given that "the mental health reports would not be admissible in any case." *Id.* at 28. The court stated that "[t]he failed efforts of trial counsel to introduce" these reports, which were clearly inadmissible and irrelevant, "whether due to his misunderstanding or otherwise, did not affect the outcome of the trial." *Id.* at 29.

Reinforcing its rejection of prejudice, the PCRA court explained that trial counsel's failure to present a cognizable defense at trial is not attributable to trial counsel given the incontrovertible facts of the case. "[C]ounsel cannot be deemed ineffective for failing to present a cognizable defense where none existed." *Id.* The court also rejected the notion that Rizor suffered prejudice because, had she known about the lack of a cognizable defense, she would have accepted a plea. The court explained: "At no time did [Rizor] express a desire to accept a plea, to admit guilt or to take responsibility for her actions. It was clear, after the trial court's colloquy of [Rizor]… that [she] was not willing to admit that she had committed this terrible act." *Id.* at 30. The PCRA court explained "**at no time did [Rizor] express that she would have accepted a guilty plea, had she been properly advised**." *Id.* (emphasis added). Therefore, the PCRA court indicated it intended to deny and dismiss the PCRA petition.

Rizor filed a response, observing that it was not legally required to respond, but nonetheless raising objections to what she characterized as the PCRA court's legal conclusions. Response to Notice of Intent to Dismiss, 1/30/2020, ¶¶ 5-6. In objecting to the PCRA court's rejection of the first claim, she alleged that she established each prong of the ineffective assistance of counsel test. With regard to prejudice, she asserted without citation to the record: "Had trial counsel properly informed [Rizor] of the inevitability of a conviction, [Rizor] would have accepted a plea agreement and thus her sentence would have been significantly shorter." *Id.* ¶ 6(f)(iii).

On February 10, 2020, the PCRA dismissed Rizor's PCRA petition. PCRA Court Order, 2/10/2020. Rizor timely appealed and filed a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Rule 1925(b) Statement,

3/17/2020, ¶¶ 1-6.[24] She continued to advance her claim that trial counsel provided deficient advice regarding the plea offer. *Id.* ¶ 3 (raising claim regarding whether the PCRA court erred in rejecting her claim that "trial counsel was ineffective for failing to properly counsel her about her chances of [sic] trial, thus ineffectively representing her in the plea bargaining phase … and causing prejudice to her in the form of going to trial on a case with no chance of success[]"). She also maintained her argument regarding counsel's failure to present a cognizable defense. *Id.* ¶ 5 ("Did the PCRA court err in dismissing [Rizor's PCRA p]etition where [Rizor] proved that trial counsel did not present a cognizable defense, thus resulting in a conviction of murder and a sentence of life in prison?"). She also raised a claim regarding whether the PCRA court erred "in dismissing [Rizor's PCRA petition] where [Rizor] proved that her trial counsel was ineffective for failing to apprise her of the reduced likelihood of success of the defense strategy after the trial court precluded her mental health evidence, and that she was prejudiced by this ineffective counsel[.]" *Id.* ¶ 4.

The PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a). It combined its analysis of Rizor's claim regarding deficient plea advice with its analysis of Rizor's claim regarding trial counsel's failure to advise her of the reduced likelihood of success of the defense strategy after the mental health evidence was precluded. The advice after the mental health evidence was precluded would have necessarily been different given (1) that a mental health defense was no longer plausible and (2) the Commonwealth's plea offer was no longer available. Combining its analysis of the claims had the unfortunate

---

[24] She raised two issues regarding the preclusion of prior PCRA counsel's testimony regarding his conversation with trial counsel. Rule 1925(b) Statement, 3/17/2020, ¶¶ 1-2. She also raised an issue regarding the PCRA court's application of the *Pierce* test. *Id.* ¶ 6. The PCRA court addressed all of these claims in its 1925(a) opinion. PCRA Court Opinion, 1/16/2020.

result of conflating the facts. Nonetheless, the court's core analysis holds true as to both claims: Rizor failed to establish prejudice.

With respect to prejudice, the PCRA court's determination largely turned on its rejection as incredible Rizor's claim that she would have accepted the plea offer, but for counsel's deficient advice. PCRA Court Opinion, 6/29/2020, at 30. It recalled that the trial court had, in open court in Rizor's presence, explained that it was granting the Commonwealth's motion in limine to exclude any of the defense mental health experts' testimony because the reports did not constitute a legal defense, and that the testimony which may have impacted her behavior on the date of the incident was not admissible. *Id.* It also recalled Rizor's acknowledgment during her colloquy that she was satisfied with trial counsel's representation and did not bring any issues to the trial court's attention. *Id.* at 31.

Further, the PCRA court observed that Rizor acknowledged in her testimony that she knew that the mental health reports would not be introduced on her behalf. *Id.* at 30-31. The PCRA court also found significant the fact that (according to Rizor's testimony at the PCRA hearing) Rizor did not express a desire to revisit her plea offer or inquire whether the plea offer was still available. The PCRA court stated that Rizor "admitted that she would have considered accepting the plea offer only if she had 'no chance.'" *Id.* at 31 (citing N.T., 6/8/2018, at 42). The PCRA court thus rejected the claim, finding that there was no prejudice. *Id.* at 39.

The PCRA court also rejected Rizor's claim regarding trial counsel's alleged failure to present a cognizable defense, rehashing its preceding opinion and order. *Compare* PCRA Court Opinion, 6/29/2020, at 31-39, *with* PCRA Court Opinion, 1/16/2020, at 23-31.

On appeal, with the benefit of the evidentiary record, the Superior Court again disagreed with the PCRA court's evaluation of the claims alleging that counsel provided inadequate advice during plea-bargaining. The court observed that Rizor presented six issues for review, which it reordered to facilitate its disposition:

> [1.] Did the PCRA court err in dismissing [Rizor's] Petition where [she] proved that [trial counsel] was ineffective for failing to properly counsel her about her chances of trial, thus ineffectively representing her in the plea bargaining phase of the case and causing prejudice to her in the form of going to trial on a case with no chance of success?
>
> [2.] Did the PCRA court err in dismissing [Rizor's] Petition where [she] proved that [trial counsel] was ineffective for failing to apprise her of the reduced likelihood of success of the defense strategy after the trial court precluded her mental health evidence, and that she was prejudiced by this ineffective counsel?
>
> [3.] Did the PCRA court err in dismissing [Rizor's] Petition where [she] proved that [trial counsel] did not present a cognizable defense, thus resulting in a conviction of murder and a sentence of life in prison?
>
> [4.] Did the PCRA court err in refusing to allow the testimony of [prior PCRA counsel] concerning his earlier conversations with [trial counsel] where [trial counsel] admitted he was ineffective in this matter?
>
> [5.] Did the PCRA court err in refusing to admit the statements of [trial counsel] where those statements were proper evidence for the PCRA court's consideration?
>
> 6. Did the PCRA court apply the wrong legal standard by concluding that there were no genuine issues of material fact rather than applying the *Pierce* test to [Rizor's] properly pled and proven Petition?

*Rizor*, 2021 WL 4704669, *3 (citing Rizor's Superior Court Brief, at 6-7).[25]

---

[25] The Superior Court granted relief because of the inadequacy of trial counsel's advice to Rizor regarding her plea offer and stated that it was not reaching the final three issues as they were rendered irrelevant. *Rizor*, 2021 WL 4704669 at *5, n.8. Given the
(continued…)

The Superior Court addressed the second claim, concluding that the PCRA court erred in dismissing Rizor's PCRA petition where she proved that trial counsel was ineffective for failing to apprise her of the reduced likelihood of success of the defense strategy after the trial court precluded her mental health evidence. It recounted Rizor's testimony from the PCRA evidentiary hearing that, although she understood that trial counsel would not introduce the mental health reports on her behalf during trial, she still believed that trial counsel could question the mental health experts if and when they were called by the Commonwealth. *Id.* at *4 (citing N.T., 6/8/2018, at 39-40, 56-58, 64-66). Thus, and again conflating the timing of the rejection of the plea and the preclusion of the expert testimony, the court explained that Rizor's decision to reject the plea offer was "predicated upon the mistaken belief that her attorney would be able to present a mental health defense." *Id.* On that basis, the court found that her claim had arguable merit. *Id.*

The Superior Court then recalled that the PCRA court stated that counsel cannot be deemed ineffective for failing to present a cognizable defense. *Id.* at *4 (citing PCRA Court Opinion, 1/16/2020, at 21-31). However, the court explained, "trial counsel's failure to present a cognizable defense goes toward evaluating the reasonableness of counsel's advice not to take the plea." *Id.* It recalled the previous panel's opinion, prior to the evidentiary hearing, which explained:

> [Rizor] claims she believed trial counsel had a legally sound defense when she rejected the plea. The court's evidentiary ruling prior to trial eviscerated counsel's ability to present this defense. Without the ability to present any exculpatory mental health testimony, and no other line of defense evident from the transcripts, counsel would have no reasonable basis for rejecting the plea.

questions upon which we granted review, we limit our discussion to the issues addressed by the Superior Court.

*Id.* at *4 (citing *Rizor*, 2017 WL 2482941 at *3). The lower court thus carried forward the conflated chronology.

The Superior Court stated that the prejudice was self-evident. "Had counsel advised [Rizor] to take the plea and [Rizor] thereby accepted the advice, she would have received a sentence of [five and a half to thirty] years of incarceration—instead of the life without the possibility of parole sentence that she is currently serving." *Id.* at *5. The court then concluded that Rizor established all three elements of a claim of ineffective assistance of trial counsel. "Ergo, she has overcome the presumption of [sic] that counsel was effective." *Id.* Therefore, the court stated it was compelled to reverse the order of the PCRA court, vacate the underlying judgment of sentence, and remand for a new trial or entry of plea.[26]

The Commonwealth subsequently filed a petition for allowance of appeal, and Rizor filed a cross-petition for allowance of appeal. The Court granted review of the following issues raised by the Commonwealth:

> Did the Superior Court err by creating an impracticable standard with substantial implications for the adjudication of claims under the PCRA?
>
> Did the Superior Court so abuse its discretion as to call for the exercise of this Honorable Court's supervisory authority?

*Commonwealth v. Rizor*, 281 A.3d 1028 (Pa. 2022) (per curiam). We also granted review of the issue raised by Rizor:

> Should this Court grant allowance of appeal where the Superior Court's decision conflicts with the United States Supreme Court's decision in *Lafler v. Cooper*, 566 U.S. 156

---

[26] The court did not reach Rizor's two challenges concerning the admissibility of out of court statements at the PCRA evidentiary hearing, given that the record established that she was entitled to relief based on the testimony presented. Finally, the court stated that it was "irrelevant to our review whether the PCRA court used the correct legal standard in considering [Rizor's] ineffectiveness claims, as we have done so." *Rizor*, 2017 WL 2482941 at *5 n.8.

(2012) and the Superior Court's prior decision in *Commonwealth v. Steckley*, 128 A.3d 826 (Pa. Super. 2015)?

*Id.*

As we are addressing these questions on appeal from the PCRA court's denial of relief, we consider whether the factual findings are supported by the record and free of legal error. *Commonwealth v. Lopez*, 249 A.3d 993, 998 (Pa. 2021). We review the legal conclusions de novo, but the PCRA court's credibility determinations, when supported by the record, are binding. *Id.* Finally, the scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the Commonwealth as the prevailing party before the PCRA court. *Commonwealth v. Koehler*, 36 A.3d 121, 177-78 (Pa. 2012).

To be entitled to PCRA relief, Rizor must establish, by a preponderance of the evidence, that she has been convicted of a crime under the laws of the Commonwealth and is currently serving a sentence of imprisonment, 42 Pa.C.S. § 9543(a)(1), that her conviction or sentence resulted from one or more of the enumerated errors in 42 Pa.C.S. § 9543(a)(2), that her claims have not been previously litigated or waived, and that the failure to litigate the issues prior to or during trial was not the result of a rational, strategic or tactical decision by counsel. 42 Pa.C.S. § 9543(a)(3), (4). Counsel is presumed effective. *Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014). To succeed on a claim asserting the ineffective assistance of counsel, as is raised here, a petitioner must rebut that presumption by pleading and proving, by a preponderance of the evidence, three elements: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction. *Commonwealth v. Pierce*, 527 A.2d 973, 975-76 (Pa. 1987). If a petitioner fails to satisfy any one of the three elements, her claim fails. *Commonwealth v. Brown*, 196 A.3d 130, 150-51 (Pa. 2018).

We address first the Commonwealth's contentions – that the Superior Court applied the wrong standard and abused its discretion in granting Rizor PCRA relief. The resolution of either question in the Commonwealth's favor obviates the need to address Rizor's claim regarding the form of relief granted. Because of the interrelatedness of the Commonwealth's two issues, we discuss their arguments together.

**Parties' Arguments**

The Commonwealth asserts that the Superior Court erred in assuming that trial counsel – unavailable to defend his actions – provided ineffective assistance based purely on Rizor's hindsight regret. Commonwealth's Brief at 20. The Commonwealth also insists that the Superior Court abused its discretion in ignoring the PCRA court's credibility determinations and misinterpreting the evidentiary hearing testimony. *Id.* at 20-24.

The Commonwealth attacks the Superior Court's application of the ineffective assistance of counsel test, insisting that Rizor failed to establish any of the three prongs. It argues the claim lacks arguable merit given that Rizor had a clear understanding of the applicable law. She admitted that she knew that the mental health expert testimony was not being introduced in her defense but she still did not want to plead guilty. *Id.* at 14-15. The Commonwealth contends that trial counsel, faced with Rizor's refusal to consider a plea, took the only reasonable course and presented the best defense available. *Id.* at 15-18.

With regard to prejudice, the Commonwealth recounts the standard enunciated in *Lafler v. Cooper*, 566 U.S. at 156, 164 (2012), and applied by the Superior Court in *Commonwealth v. Steckley*, 128 A.3d 826, 832 (Pa. Super. 2015). That standard requires a showing that there is a reasonable probability that the defendant would have accepted the plea offer, that the prosecution would not have withdrawn it due to intervening circumstances, and that the court would have accepted its terms, resulting in a less

severe sentence. The Commonwealth interprets Rizor's testimony at the PCRA hearing as meaning that she would have accepted a plea deal only if there was no chance of winning at trial. Commonwealth's Brief at 18-19 (citing N.T., 6/8/2018, at 42). Further, the Commonwealth recounts that the PCRA court determined that Rizor's testimony at the PCRA hearing was not credible, and that finding is binding on reviewing courts. *Id.* at 19-20. In that respect, the Commonwealth draws attention to facts which the Superior Court acknowledged but never reconciled with its conclusion that Rizor suffered prejudice: namely, the PCRA court found Rizor's testimony to be incredible; Rizor never admitted guilt nor otherwise took responsibility for her actions; and Rizor's testimony, even if credible, was only that she would have accepted a plea if there was "zero chance at trial." *Id.* at 22-23. According to the Commonwealth, the Superior Court "overlooked the facts of record that Rizor candidly did not want to plead guilty." *Id.* at 22-23.

By contrast, Rizor insists that the Superior Court correctly concluded that she established each of the three elements for her ineffective assistance of counsel claim, and in so doing, she rehashes its mistaken recitation of the facts. Rizor's Brief at 20. She recites the Superior Court's conclusion that the claim has arguable merit because, when Rizor rejected the plea, "that decision was predicated upon the mistaken belief that her attorney would be able to present a mental health defense." *Id.* (quoting *Rizor*, 2021 WL 4704669, *3). Rizor also contends that the record shows that she rejected the plea offer without an adequate understanding of a diminished capacity defense which is extremely limited and only reduces first degree murder to third degree murder. Rizor's Brief at 21, 24. According to Rizor, without an explanation, she did not understand that trial counsel's defense strategy of diminished capacity, if successful, would still result in a significant

sentence of imprisonment. Rizor's Brief at 24-26.[27] She maintains that counsel should have explained to her that her best-case scenario could very likely result in a sentence longer than that offered by the prosecution, and that pursuant to trial counsel's mental health defense strategy, there was no chance of an acquittal.

Rizor also maintains that there was no reasonable basis for trial counsel's failure to properly counsel her regarding the circumstances and to advise her to accept the plea offer. *Id.* at 24. Rizor highlights the discussion in chambers in which trial counsel demonstrated a lack of understanding about the effect of a successful mental health defense. *Id.* at 24-26. Rizor posits that it is obvious that trial counsel could not have explained the ramifications of the defense strategy when he did not understand them.

Rizor then insists that the prejudice was self-evident as the Superior Court found. She claims that the Commonwealth is seeking to require certainty that she would have taken the deal, whereas *Lafler* requires only "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 28 (quoting *Lafler*, 566 U.S. at 163). Rizor states that the "standard is appropriate because nobody can state definitively what would have happened with effective representation during plea negotiations." *Id.* Rizor maintains that the Superior Court correctly reviewed the record and found that the PCRA court's conclusions were not supported. *Id.* at 29-30.

As to the PCRA court's credibility assessments, Rizor insists that the PCRA court found her testimony incredible on only three points: (1) that she was uninformed at the time she rejected the plea offer; (2) that she did not know that her mental health experts were precluded; (3) and that she would not have rejected the plea offer had she known

---

[27] Setting aside the other charges, a successful diminished capacity defense would lead to exposure to a sentence of up to forty years of imprisonment for third degree murder. *See* 18 Pa.C.S. § 1102(d).

that the experts were precluded. *Id.* at 32 (citing PCRA Court Opinion 6/8/2018, at 30). Rizor states that nothing in the Superior Court's opinion contradicts these findings, and she believes that the Superior Court did not alter the PCRA court's credibility determinations. *Id.* In the alternative, she contends that even without her testimony, the record demonstrates that trial counsel failed to provide effective representation. *Id.* at 33.

Rizor ultimately disentangles the facts, asserting that counsel provided deficient advice in two ways. First, trial counsel failed to advise her regarding the plea that was offered and rejected. Second, after she rejected the plea on the record and once the mental health expert testimony was formally precluded, trial counsel failed her again. According to Rizor, trial counsel

> should have asked for a recess to advise [her] of the implications of the ruling, and he did not. He could have requested that the trial court conduct another colloquy given the significance of the ruling. He did not. And of course, he could have approached the Commonwealth about a new plea offer in light of the ruling, but did not.

Rizor's Brief at 31.

### Analysis

We begin our analysis by addressing the standard applicable to claims that counsel provided ineffective assistance in advising a defendant to reject a plea offer. This is our Court's first consideration of these principles, as we have not previously addressed the two cases implicated by this issue, *Lafler* from the High Court and *Steckley* from the Superior Court.

In *Lafler*, a defendant (Cooper), facing multiple charges arising out of a shooting, rejected a plea offer pursuant to which the government would have dismissed two of the charges and recommended a reduced sentence on the remaining two charges. *Lafler*, 56 U.S. at 161. Cooper rejected the offer based on his counsel's mistaken advice that the prosecution would be unable to establish intent to murder because the victim was

shot below the waist.  *Id*. at 166.  Cooper was convicted and subsequently sentenced to a term of imprisonment three and a half times more severe than the term in the rejected plea.

The Supreme Court first recounted that defendants have a Sixth Amendment right to counsel "that extends to the plea-bargaining process."  *Id*. at 162.  The Court then addressed the two-prong *Strickland*[28] test for ineffective assistance of counsel.  Given that the parties conceded that counsel's advice was deficient, the Court did not explore the first prong.  Instead, its focus, like ours, was on prejudice.  In that respect, the Court explained that to establish prejudice, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 164 (citing *Strickland*, 466 U.S. at 694).  In the context of a plea offer rejected by a defendant, the defendant "must show the outcome of the plea process would have been different with competent advice."  *Id*.  It considered a prior case where, in evaluating a claim that ineffective assistance of counsel led to the improvident **acceptance** of a guilty plea, the Court required the petitioner to show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial."  *Id*. (citing *Hill v. Lockhart*, 474 U.S. 52 (1985)).  Then it explained:

> In contrast to *Hill*, here the ineffective advice led not to an offer's acceptance but to its rejection. Having to stand trial, not

---

[28]  Whereas we apply a three-prong test to evaluate ineffective assistance of counsel claims, *Pierce*, 527 A.2d at 975-76, the Sixth Amendment's test is two-prong.  Pursuant to *Strickland v. Washington*, 466 U.S. 668, 687 (1984), "a convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components." First, a defendant must show that counsel's performance was deficient, i.e., "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  Second, a defendant must show that counsel's deficient performance resulted in prejudice, i.e., that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id*.

choosing to waive it, is the prejudice alleged. In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 163-64. The Court relied on the Sixth Circuit Court of Appeals' analysis of prejudice in those circumstances. *Id.* at 174 (citing *Cooper v. Lafler*, 376 Fed. Appx. 563, 571-72 (6th Cir. 2010), *vacated by Lafler*, 566 U.S. at 175 (vacating and remanding for further proceedings consistent with the corrected remedy)).[29] The court cited Cooper's uncontradicted testimony that, had he been properly advised, he would have accepted the plea offer. *Cooper,* 376 Fed. Appx. at 571. The court viewed that evidence as sufficient to establish prejudice. *Id.* Also, the court noted that counsel had confirmed that Cooper was open to pleading guilty, and it found that the significant disparity between the plea offer and exposure after trial lent credence to the claim. *Id.* at 571-72. The court rejected the Government's arguments that Cooper's other conduct – he indicated that he sought an even better plea deal, and at one point denied committing the crime – meant that Cooper would not have accepted the plea. *Id.* at 572. This analysis by the Sixth Circuit Court of Appeals was cited by the High Court as the basis for establishing that Cooper proved prejudice and that Cooper satisfied the *Strickland* standard for ineffective assistance.

Building on the principles established in *Lafler*, in *Steckley*, our Superior Court recounted *Lafler*'s application of *Strickland*'s prejudice prong. The *Steckley* court thoughtfully applied each aspect of the relevant prejudice standard. There, the defendant

---

[29] Notably, the Sixth Circuit was tasked with a de novo review of prejudice given that the lower courts had not addressed it. *Cooper*, 376 Fed. Appx. at 573 n.4

(Steckley) was presented with two plea offers—one in which the Commonwealth would recommend three to six years of imprisonment, then another where it would recommend two to six years of imprisonment—but declined both because, in his words, it "didn't make sense" to him. *Steckley*, 128 A.3d at 830. He proceeded to trial where he was found guilty of two counts of possession of child pornography. *Id.* at 829. Prior to sentencing, the Commonwealth provided Steckley notice of its intent to seek imposition of a mandatory minimum sentence of twenty-five years of imprisonment, and Steckley was subsequently sentenced to two concurrent sentences of twenty-five years of imprisonment. *Id.* Steckley filed a PCRA petition alleging that his attorney was ineffective in failing to inform him of the potential for the twenty-five year mandatory sentence. *Id.* at 830. At a PCRA hearing, Steckley's trial counsel testified that she had been unaware of the twenty-five year mandatory minimum sentence, that she did not apprise Steckley of the sentence, and that she would have advised him differently had she realized. Steckley testified that, had he known about the mandatory minimum sentence, he would have accepted the Commonwealth's plea offer. *Id.* The PCRA court entered an order granting the PCRA petition, vacating Steckley's convictions and relisting the cases for trial.

Faced with cross-appeals, the Superior Court identified the discrete issues before it: first, whether the PCRA court erred in concluding that Steckley proved prejudice to support his ineffective assistance of counsel claims; and second, whether the PCRA court erred in determining that the proper remedy was to vacate the conviction and grant a new trial. *Id.* at 831.

The Superior Court focused on prejudice given that was the only prong challenged by the Commonwealth. The court then recited the test from *Lafler*. *Steckley*, 128 A.3d at 832 (citing *Lafler*, 132 S.Ct. at 1385). The court applied the *Lafler* test to the circumstances under review, first reciting facts that supported the PCRA court's finding

that Steckley would have accepted the plea: Steckley's own testimony at the PCRA hearing supported such a finding, and even if it was "self-serving," it was not automatically treated as "inherently deficient as a matter of law." *Id.* at 832. Further, trial counsel's testimony that she would have strenuously encouraged Steckley to accept the plea offer corroborated Steckley's testimony. *Id.*

The court distinguished the circumstances from *Foster v. United States*, 735 F.3d 561, 566 (7th Cir. 2013), where prejudice was rejected. In *Foster*, the petitioner's testimony was deemed incredible, and trial counsel testified that, even once the petitioner was more fully apprised of the circumstances of his sentencing exposure, the petitioner reiterated his refusal to accept a guilty plea and stated that he wanted to go to trial even if it meant he might be sentenced to life imprisonment. In contrast, in *Steckley*, the PCRA court deemed Steckley's testimony that he would have accepted a plea credible. *Steckley*, 128 A.3d at 834.[30]

Next, the Superior Court rejected the Commonwealth's arguments that Steckley failed to prove that the Commonwealth would have extended the same offer. The Commonwealth contended that a more diligent prosecutor would have discovered the mandatory minimum and withdrawn the plea offer. The court disagreed, explaining that the relevant inquiry is whether a reasonable probability exists that the Commonwealth would have discovered the mandatory minimum and withdrawn the plea, which was unlikely given that the Commonwealth only discovered the mandatory minimum seven months after Steckley rejected the plea offer and proceeded to trial. *Id.* at 834. The court

---

[30] The Superior Court acknowledged that Steckley had, during trial, maintained his innocence. Although this is "a factor that the PCRA court may consider," the factor was not determinative. It was especially an unconvincing factor given that innocent defendants may plead guilty, and an assertion of innocence does not necessarily belie a claim that he would have plead guilty. *Id.* at 834.

then stated that it was just as likely that the Commonwealth would have used the threat of the mandatory minimum to convince Steckley to accept the plea. *Id.* at 835.

Finally, the Superior Court rejected the Commonwealth's argument that Steckley failed to establish that the trial court would have accepted the guilty plea. *Id.* at 835. The court acknowledged that a court may reject terms of a plea deal where it believes the terms do not serve justice. *Id.* (citing *Commonwealth v. White*, 787 A.2d 1088, 1091 (Pa. Super. 2001)). However, the arrangement at issue would not have involved dismissal of charges or a negotiated sentence that would bind the trial court. Further, statements that the trial court made at sentencing that even without the mandatory minimum, it would have imposed the same sentence were unmoving given the statutory constraints at issue in that case. *Id.* at 835. Instead, the available sentence, even if the court declined to follow the Commonwealth's recommendation per the plea, would have been significantly shorter than the twenty-five year mandatory term of imprisonment. *Id.*[31]

Having reviewed the record before it in the light most favorable to Steckley against each of the requirements from *Lafler*, the Superior Court concluded that the PCRA court did not err in concluding that Steckley demonstrated a reasonable probability that, but for the ineffective advice of counsel, he would have received a less severe sentence than the one he received following trial. *Id.*[32]

---

[31] The court explained that "a sentence of twenty-five to fifty years[ of] imprisonment based on Steckley's convictions would have constituted an illegal sentence unless the mandatory sentence applied[,]" given that he was charged with two third degree felonies, both of which were subject to a statutory maximum sentence of not more than seven years. *Steckley*, 128 A.3d at 835 & n.4 (citing 11 Pa.C.S. § 1103). Even if the trial court imposed the statutory maximum for each count and imposed the sentences consecutively, Steckley's aggregate sentence, without the mandatory minimum, would have been seven to fourteen years. *Id.* at 835, n.4.

[32] As noted above, after concluding that the PCRA court did not err in granting Steckley's PCRA petition, the Superior Court addressed whether the appropriate remedy was to vacate Steckley's conviction and to order a new trial. *Steckley*, 128 A.3d at 836.

*Steckley* exemplifies the usefulness of Lafler's analytic framework when courts evaluate a claim that counsel was ineffective for advising a client to reject a plea offer. In a complicated area of legal analysis,[33] *Lafler* sets a thoughtful and clear standard. The High Court in *Lafler* recounted that its test was consistent with that "adopted and applied by [the Sixth Circuit and] other appellate courts without demonstrated difficulties or systemic disruptions." *Lafler*, 566 U.S. at 164 (collecting cases). The Superior Court has also repeatedly applied the test, in reliance of *Steckley* and *Lafler*. *See, e.g., Commonwealth v. Kruge*, 2021 WL 653086, *4-*5 (Pa. Super. 2021) (non-precedential decision) (affirming PCRA court's grant of relief where counsel failed to advise defendant regarding a mandatory sentencing enhancement); *Commonwealth v. Irvin*, 2020 WL 1951688, *4 (Pa. Super. 2020) (non-precedential decision) (affirming PCRA court's denial of relief where PCRA court credited trial counsel's testimony that he thoroughly advised his client regarding the circumstances of the plea offer and likelihood of success at trial and that client's mind was "pretty made up as to trial").

By contrast, the Superior Court in this case summarily concluded that prejudice was "self-evident" because, had counsel provided advice to accept the plea, and had Rizor accepted the plea, she would have received a significantly better sentence. *Rizor*, 2017 WL 2482941 at *5.[34] However, this construction of prejudice lacks structure, and, as illustrated in this case, it relieves a petitioner of her burden to prove that there is a reasonable probability that the result would have been different. The Superior Court's opinion failed to adhere to these established legal principles. Its cursory consideration of

---

[33] *Missouri v. Frye*, 566 U.S. 134, 154 (2012) (Scalia, J., dissenting) (criticizing the test for requiring "retrospective crystal-ball gazing posing as legal analysis").

[34] Indeed, even the Commonwealth acknowledges that the circumstances – where the mental health evidence was not coming in for the defense and where Rizor was offered an objectively sweet plea deal – "undoubtedly beg the question why Rizor would proceed to trial." Commonwealth's Brief at 16.

prejudice, though viscerally compelling, is not a legally sound analysis. Its error was compounded by its conflation of the facts, as well as its failure to acknowledge and consider the credibility findings of the PCRA court under the applicable standard.

In an attempt to disentangle the conflated facts, we address prejudice first with regard to whether Rizor established that trial counsel provided faulty advice to reject the plea, and second, with regard to whether Rizor established that trial counsel provided inadequate advice regarding preclusion of the mental health evidence.

Although the parties acknowledge the standard for prejudice set out in *Lafler*, neither analyzes its constituent parts. A step-by-step application of that standard leads to the obvious conclusion that Rizor failed to prove prejudice. The first question is whether Rizor established that, but for the advice of trial counsel, there is a reasonable probability that she would have accepted the plea and that the prosecution would not have withdrawn it in light of intervening circumstances. At the moment at which the plea offer was presented to the trial court during the colloquy, the Commonwealth was clearly extending and standing by its offer. Therefore, the second part of the inquiry, that the prosecution would not have withdrawn the offer, is easily met.

However, the reasonable probability that Rizor would have accepted the plea deal if she had been adequately advised is not established on this record. We observe that in Rizor's PCRA petition, she did not allege that absent counsel's deficient advice, she would have taken the plea offer; she did not state that she intended to testify to that effect at an evidentiary hearing; and her proffered witness list attached to her PCRA petition does not point to another witness to testify to that effect. On remand from the Superior Court, given the opportunity to establish prejudice, Rizor testified regarding her decision to reject the plea. In sum, her testimony gives the impression that she was inclined to go to trial, not that in hindsight she would have accepted the plea offer. She recounted that

she asked trial counsel about their chances at trial and, as she testified, "I told him that if there was a chance [of winning at trial], that I did want to take it to trial." N.T., 6/8/2018, at 37-38. On cross-examination, she acknowledged that "[t]here is always that chance" of being found not guilty and she was hoping for that chance. *Id.* at 54. Rizor's only testimony suggesting that she was open to a plea deal was when she said, "If I had no chance, I would have taken the plea offer." *Id.* at 42. Rizor and the Commonwealth dispute the meaning of that statement—it could be evidence that Rizor was open to a plea deal or evidence that Rizor would take a plea deal only with zero chance of acquittal. We are constrained by a standard which requires us to review the statement in the light most favorable to the Commonwealth who prevailed in the PCRA court. Rizor thus testified that she would only take a plea offer if there was no chance of acquittal.

We reiterate that trial counsel still was pursuing the mental health defense strategy at the time Rizor rejected the plea deal. Though Rizor now focuses on the implications of the precluded diminished capacity defense, the record shows that trial counsel was also attempting to use the mental health evidence to prove manslaughter. N.T., 3/4/2008, at 45-46. Rizor had a colorable defense at that time, and there existed a chance of success at trial. Her decision to reject the plea deal and the Commonwealth's decision to offer it occurred when the defense strategy was not yet foreclosed. Therefore, her decision was not, contrary to Rizor's argument, "predicated upon the **mistaken** belief that she would be able to present a mental health defense." Rizor's Brief at 20 (quoting *Rizor*, 2021 WL 4704779, at *3) (emphasis added). Plea deals are negotiated in the context of unknown circumstances, and presumably calculated based on the Commonwealth's risk assessment, an assessment that would dramatically change upon the preclusion of the main defense strategy.

Further, we recall that when reviewing a credibility determination by the PCRA court, this Court is bound by the court's credibility determinations, unless those determinations are not supported by the record. *Commonwealth v. Flor*, 259 A.3d 891, 902 (Pa. 2021). The credibility determinations are to be provided "great deference[,]" and indeed, they are "one of the primary reasons PCRA hearings are held in the first place[.]" *Id.* at 910-911 (citing *Commonwealth v. Johnson*, 966 A.2d 523, 539 (Pa. 2009)). Moreover, we must conduct our review in the light most favorable to the prevailing party, in this instance, the Commonwealth. *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015). Given that the PCRA court, as fact-finder, has the opportunity to listen to witnesses, to observe their demeanor and attitude, we have stated that "there is no justification for an appellate court, relying solely upon a cold record, to review the fact-finder's first-hand credibility determinations." *Commonwealth v. White*, 734 A.2d 374, 381 (Pa. 1999).

As described above, the PCRA court issued a contrary credibility determination. It emphasized that Rizor's allegations regarding counsel's advice—that he failed to review the plea with her but also advised her that she "would never set foot on state grounds"—were contradictory. PCRA Court Opinion, 1/6/2020, at 11. The PCRA court also stated that it "did not find credible [Rizor's] claim[] … that she would not have rejected the Commonwealth's plea offer had she known the defense mental health experts would not be permitted to testify." *Id.* at 22. Stated in the context of the question here, the PCRA court disbelieved Rizor that she would have accepted the plea offer even assuming that the mental health defense was unavailable. Thus, even assuming that the mental health defense was unavailable,[35] the PCRA court did not find credible Rizor's allegations that

---

[35] The PCRA court noted other parts of the record that it viewed as corroborating its conclusion. The PCRA court recounted Rizor's testimony that once she was aware that the mental health reports would not be introduced on her behalf, she did not express a
(continued…)

she would have accepted the plea deal. The PCRA court's credibility determination is binding.

Though Rizor asserts that the Superior Court's reasoning does not contradict the PCRA court's findings, this is only true because the Superior Court did not apply the *Lafler* standard or address Rizor's testimony from the evidentiary hearing. In concluding that prejudice was "self-evident," the Superior Court and Rizor overlooked the burden of proof required of a PCRA petitioner. The standard requires some degree of crystal ball gazing and proof that there exists a reasonable probability that the petitioner would have accepted a plea deal. However Rizor provides virtually no argument to demonstrate that she proved that there is a reasonable probability that **she** would have accepted the plea deal. In essence, her argument boils down to a reasonable person standard: "Given the strengths of the Commonwealth's case and trial counsel's lack of any cognizable defense, it is apparent from the record alone that if [Rizor] understood the enormity of her decision, she probably would have made a different one." Rizor's Brief at 29. She ignores that *Lafler* does not establish an entirely objective reasonable person standard. Instead, reviewing courts are to look to the specific facts and circumstances of the defendant.[36]

---

desire to revisit her plea or inquire whether the plea offer was still available. PCRA Court Opinion, 1/6/2020, at 22-23 (citing N.T., 6/18/2020, at 69-70). The PCRA court highlighted that Rizor's only suggestion that she would have taken the plea offer was in response to counsel's question: "[I]f [trial counsel] had told you, we have no chance of winning, how would that have affected your decision?" and Rizor stated, "If I had no chance, I would have taken the plea offer." *Id.* (citing N.T., 6/8/2018, at 42). The PCRA court interpreted this as an admission that "she would have considered accepting the plea offer **only** if she had 'no chance.'" *Id.* (emphasis added). The PCRA court also referred to the colloquy with the trial court in conjunction with the plea rejection in which Rizor acknowledged that she had discussed her defenses with her attorney and stated that she was satisfied with her representation. *Id.*

[36] In *Lafler*, Cooper testified credibly that he would have accepted the deal, and trial counsel testified that Cooper was open to pleading guilty. *Lafler*, 474 U.S. at 174 (citing *Cooper*, 376 Fed. Appx. at 571-72). There was testimony that Steckley only rejected the plea offers because the offers did not make sense to him; he testified credibly that he (continued…)

*See, e.g., Lafler*, 474 U.S. at 164 (citing *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998) (reasoning that a disparity between the sentence received and the potential sentence for a plea "provides sufficient objective evidence—when combined with a petitioner's statement concerning his intentions—to support a finding of prejudice")).

Further, Rizor does not cite any authority where a petitioner establishes that there exists a reasonable probability that she would have accepted a plea deal but for counsel's deficient advice absent credible testimony from the petitioner to that effect. Though we do not doubt that this feat is possible, the PCRA court here also identified evidence corroborating that there was not a reasonable probability that Rizor would have accepted the plea offer such as that Rizor told counsel if there was a chance of winning at trial, she wanted to go to trial. Aside from her single statement at the PCRA evidentiary hearing that she would have accepted a plea offer if she had "no chance[,]" Rizor presented no specific evidence that she would have taken the deal. We acknowledge that this standard does not necessarily require the testimony of a PCRA petitioner, or any direct testimony. It may be that circumstantial evidence proves that there is a reasonable probability that the petitioner would have accepted the plea deal but for counsel's deficient advice. Nonetheless, on this record, viewed in the light most favorable to the Commonwealth, the PCRA court did not err in concluding that Rizor failed to establish prejudice, and therefore, it did not err in denying PCRA relief.[37]

---

would have accepted the deal if advised about the mandatory minimum. *Steckley*, 128 A.3d at 830.

[37] The dissent would reach the opposite result, apparently based on Rizor's decision to litigate the PCRA petition and present this claim. Dissenting Op. at 3. Rather than focusing on how Rizor established prejudice—the main issue in this case—the dissent describes in detail the errors of trial counsel's judgment and advice. We agree with many of the dissent's concerns that trial counsel's strategy appears to have been scattershot and flimsy. *Id.* at 5. However, those concerns do not speak to prejudice. Filing a PCRA petition and presenting a claim has never been sufficient to establish prejudice and the (continued…)

Finally, we address Rizor's assertion that trial counsel provided ineffective assistance when he failed to explain to her the significance of the trial court's ruling precluding the mental health evidence and when he failed to approach the Commonwealth about a new plea offer. Rule 1925(b) Statement, 3/17/2020, ¶ 4. The PCRA court purported to address this claim together with the claim regarding bad plea advice, overlooking that the latter claim could not contemplate the preclusion of the mental health evidence and the former claim could not contemplate the plea previously offered and rejected. Ultimately, the PCRA court's conclusion regarding prejudice is correct as to either claim. Rizor does not articulate what prejudice she suffered as a result of this alleged ineffective assistance. Given that the preclusion order virtually eviscerated her defense, we will not assume that the prosecution would not have withdrawn its prior plea offer as a result of that ruling. Indeed, Rizor's argument is that trial counsel should "have approached the Commonwealth about a new plea offer in light of the ruling, but did not." Rizor's Brief at 31. Rizor has not cited any legal authority to establish that this general averment of prejudice is adequate, nor has she cited any cases establishing prejudice in analogous circumstances. In sum, she has not developed an argument in this respect. Moreover, the trial court found incredible Rizor's testimony that she would have accepted the plea offer had she known about the preclusion of the mental health evidence. For the reasons stated above, this Court is bound by the PCRA court's credibility determination. Again, we conclude that on this record, viewed in the light most favorable to the Commonwealth, the PCRA court did not err in concluding that Rizor failed to establish prejudice and therefore, it did not err in denying PCRA relief.

We therefore vacate the Superior Court's judgment granting relief and remand for that court to address the outstanding issues raised by Rizor in her Pa.R.A.P. 1925(b)

---

dissent does not identify any other evidence Rizor presented to demonstrate that she would have taken the plea deal.

statement and Superior Court brief to the extent that they remain unresolved in light of our decision.

Chief Justice Todd and Justices Dougherty, Mundy and Brobson join the opinion.

Justice Wecht files a dissenting opinion.